## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Anthony Lewis Ware,           )
                                )
       Plaintiff,             )
                                )     Civil Action
       v.                    )
                                )     File No. 05-362
Ball Plastic Container Corp.,   )
                                )
       Defendant.         )

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Of Counsel
Bradley E. Strawn, Esquire
Littler Mendelson, PC
Three Parkway, Suite 1400
1601 Cherry Street
Philadelphia, PA  19102

**TYBOUT, REDFEARN & PELL**

*/S/ David G. Culley*

**DAVID G. CULLEY, ESQUIRE**
**TIMOTHY S. MARTIN, ESQUIRE**
Delaware Bar I.D. No.:  2141
300 Delaware Avenue
Suite 1100
P.O. Box 2092
Wilmington, DE  19899
(302) 658-6901
E-mail Address:  dculley@trplaw.com
Attorneys for Defendant

DATED:       December 2, 2005

# TABLE OF CONTENTS

Page

I.      NATURE AND SCOPE OF PROCEEDINGS ................................................... 1

II.     SUMMARY OF ARGUMENT ...................................................................... 1

      A.    Plaintiff's Complaint Should Be Dismissed Because This Court Cannot Exercise
           Personal Jurisdiction Over Ball ................................................... 1

      B.    Plaintiff's Complaint Should Be Dismissed Because Venue Does
           Not Lie In the District of Delaware ................................................ 1

III.    STATEMENT OF FACTS ........................................................................... 2

      A.    There Are No Allegations of Wrongful Conduct In Delaware ............................ 2

      B.    Ball Does Not Have Operations in Delaware ................................................. 3

      C.    Plaintiff Was Not Employed By and Did Not Seek Employment With Ball ........ 3

      D.    Shipping Records Are Maintained In New Jersey, Not Delaware ...................... 3

      E.    Plaintiff Was Banned From Ball's New Jersey Facility Because of
           His Abusive Conduct There; No Acts Occurred In Delaware ........................ 4

IV.     LEGAL ARGUMENT ................................................................................. 4

      A.    Plaintiff's Complaint Should Be Dismissed Because This Court
           Cannot Exercise Personal Jurisdiction Over Ball ...................................... 6

          1.    Plaintiff Must Meet "General Jurisdiction" Standard .............................. 7

          2.    General Jurisdiction's Heightened Standard of "Continuous and
             Systematic" Contacts Approximating "Physical Presence" Is Not Met .... 8

      B.    Plaintiff's Complaint Should Be Dismissed Because Venue Does Not Lie in the
           District of Delaware ................................................................... 10

V.      CONCLUSION ........................................................................................ 12

UNREPORTED DECISIONS

M&L of Delaware, Inc.  v.  Benjamin Wallace, et al. .............................. Exhibit 1

Wanda Fisher, et al.  v.  TEVA PFC, SRL, et. al. .................................. Exhibit 2

Orange Products, Inc.  v.  Howard Winters, et. al. ................................. Exhibit 3

Lester Paige  v.  Solo Cup. ............................................................ Exhibit 4

Anne Kravitz  v.  Institute for International Research, Inc. ....................... Exhibit 5

TABLE OF CITATIONS

Page

**Cases**

Allied Leather Corp. v. Altama Delta Corp.,
    785 F. Supp. 2d 494 (M.D. Pa. 1992) ................................................................10

Applied Biosystems, Inc. v. Cruachem, Ltd.,
    772 F. Supp. 1458 (D. Del. 1991) ........................................................................8

Dollar Savings Bank v. First Security Bank of Utah, N.A.,
    746 F.2d 208, 210 (3d Cir. 1984) .........................................................................6

Fisher v. Teva PFC, SRL,
    2005 U.S. Dist. LEXIS 18134 (D. N.J. August 16, 2005) ....................................8

Helicopteros Nacianales de Columbia, S.A. v. Hall,
    466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed. 485 (1984) ............................................8

International Shoe Co. v. Washington,
    326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ..................................................8

Kravitz v. Institute for Int'l Research, Inc.,
    1993 U.S. Dist. LEXIS 15669 (E.D. Pa. November 5, 1993) .............................12

LaNuova D&B, S.P.A. v. Bowe Co., Inc.,
    513 A.2d 764 (Del. 1986) .....................................................................................7

Magid v. Marcal Paper Mills, Inc.,
    517 F. Supp. 1125 (D. Del. 1981) ......................................................................7-8

M&L of Delaware, Inc. v. Wallace,
    2004 U.S. Dist. LEXIS 21863 (D. Del. Oct. 18, 2004) ......................................5-7

North Penn Gas Co. v. Corning Natural Gas Corp.,
    897 F.2d 687 (3d Cir. 1990) .................................................................................5

Paige v. Solo Cup,
    2002 U.S. Dist. LEXIS 14757 (D. Del. August 6, 2002) ................................10-11

Quarles v. General Inv. & Dev. Co.,
    260 F. Supp 2d 1(D. D.C. 2003) ...........................................................................2

Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,
    675 F.2d 587 (3d Cir. 1982) .................................................................................8

Rojas v. Trans State Airlines, Inc.,
    204 F.R.D. 265 (D. N.J. 2001) ............................................................................12

Romann v. Geissenbertger Mfg. Corp.,
    865 F. Supp. 2d 255 (E.D. Pa. 1994) ..................................................................10

Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.,
    376 F. Supp. 2d 571 (D. Del. 2005) ......................................................................7

William Rosenstein & Sons Co. v. BBI Produce, Inc.,
   123 F. Supp 2d 268 (M.D. Pa. 2000) ........................................................... 4, 5, 8-10

World-Wide Volkswagen Corp. v. Woodson,
   444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ...................................................8

**Rules and Statutes**

10 Del. C. § 3104(c) .................................................................................5, 7
28 U.S.C. §1406(a) ....................................................................................11
42 U.S.C. §2000e-5(f)(3) ....................................................................... 10-11
Fed. R. Civ. P. 4(d) ....................................................................................2
Fed. R. Civ. P. 12(b)(2) ..........................................................................1, 4
Fed. R. Civ. P. 12(b)(3) ......................................................................... 1-11

## I.    NATURE AND SCOPE OF PROCEEDINGS

Defendant Ball Plastic Container Corp. ("Defendant" or "Ball") submits this Brief in Support of its Motion to Dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (3).   Plaintiff Anthony Lewis Ware ("Plaintiff") filed suit in this Court alleging that Ball discriminated against him on the basis of his race by failing to employ him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.   Ball waived service by summons and timely files this initial response, showing that this Court lacks personal jurisdiction over Ball and that venue is improper in this district.   Thus, Plaintiff's Complaint should be dismissed in its entirety, even at this early stage of litigation.

## II.    SUMMARY OF ARGUMENT

### A.    Plaintiff's Complaint Should Be Dismissed Because This Court Cannot Exercise Personal Jurisdiction Over Ball

Plaintiff has failed to allege facts sufficient to establish personal jurisdiction over Ball.   The Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(2) because Plaintiff cannot satisfy the general jurisdiction due process standard of "continuous and systematic" contacts by Ball approximating "physical presence" in Delaware.

### B.    Plaintiff's Complaint Should Be Dismissed Because Venue Does Not Lie In the District of Delaware.

None of Title VII's venue requirements are met in Delaware.   Accordingly, this Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(3).

### III.    STATEMENT OF FACTS

#### A.    There Are No Allegations of Wrongful Conduct In Delaware.

The *pro se* Complaint in this matter was filed by Plaintiff on June 6, 2005. (A copy of Plaintiffs' Complaint and its attachments are included in the Appendix, A-1 to A-23). Ball timely accepted service by mail and waived service by summons.[1] The Complaint alleges that Plaintiff was a victim of race discrimination because Ball failed to employ him. (Complaint ¶¶10-11, A-2 to A-3). The Complaint further alleges that the discriminatory conduct took place at Ball's place of business located in Cinnaminson, New Jersey. (Complaint ¶4, A-1). Plaintiff resides in Delaware, but the Complaint does not allege that any discriminatory acts occurred there. (Complaint, A-1 to A-23).

#### B.    Ball Does Not Have Operations in Delaware.

Ball is not located, and does not reside or otherwise maintain any presence in Delaware, and there is no allegation that it does. (Declaration of Elizabeth Estep, ¶¶4-5, A-24)[2]. Rather, Ball is a Colorado corporation that does and is qualified to do business in several states, including New Jersey and Pennsylvania, but not in Delaware (Estep, ¶¶4-5, A-24).

Ball manufactures polythylene terephthalate ("PET") containers for water and soft drinks at its plant in Cinnaminson, New Jersey, which is referred to as its Delran, New Jersey facility within the company. (Declaration of William Gallagher, ¶¶3-5, A-25). Crews at the Delran plant load PET containers onto truck shipping trailers for delivery to Ball's customers. (Gallagher, ¶6, A-25). The shipping trailers are transported to

---

[1] Under Fed. R. Civ. P. 4(d), such a waiver does not waive any objection to jurisdiction or venue.
[2] The declarations submitted with this motion are solely directed to jurisdiction and venue and therefore do not convert the motion to one of summary judgment. Quarles v. General Inv. & Dev. Co., 260 F. Supp. 2d 1, 18 (D. D.C. 2003) (In a Rule 12(b) motion concerning the court's jurisdiction, matters outside the pleadings can be considered).

2

customers by several independent trucking firms. (Gallagher, ¶7, A-26). Only three percent (3%) of Ball's production at the Delran facility is delivered by common carriers to a customer in Delaware, Pepsi Bottling Group. (Declaration of Bryant Haselden, ¶8, A-29 to A-30). However, Ball employees do not deliver product in Delaware. (Haselden, ¶10, A-30).

### C. Plaintiff Was Not Employed By and Did Not Seek Employment With Ball.

One of the independent trucking firms that picks up product from the Delran, New Jersey plant is National Freight, Inc. ("NFI"). (Gallagher, ¶7, A-26). It delivers to one of the Delran plant's customers, Cott Beverage Company ("Cott"), in Concordville, Pennsylvania. (Gallagher, ¶¶7-8, A-26). Plaintiff was employed as a driver by NFI. (Gallagher, ¶9, A-26). Plaintiff, as an employee of NFI, delivered PET container shipments from Ball's Delran, New Jersey plant to Cott's Concordville, Pennsylvania facility. (Gallagher, ¶10, A-26).

### D. Shipping Records Are Maintained In New Jersey, Not Delaware.

Records identifying the drivers of shipments from the Delran, New Jersey plant are maintained by Ball at that facility. (Gallagher, ¶19, A-27). No records regarding shipments delivered by Plaintiff are maintained in Delaware because Ball does not have any facilities or operations in Delaware. (Estep, ¶5, A-24; Gallagher, ¶¶20-21, A-27).

### E. Plaintiff Was Banned From Ball's New Jersey Facility Because of His Abusive Conduct There; No Acts Occurred In Delaware.

In February 2004, Ball's Delran, New Jersey Warehouse Manager, William Gallagher, received a telephone call from a warehouse supervisor, Joe Dugan. (Gallagher, ¶11, A-26). Mr. Dugan reported that during his shift that evening at the plant, Plaintiff approached him and demanded to immediately pick up a load for Cott.

(Gallagher, ¶12, A-26). Upon being told that he would have to wait until a load for Cott was ready, Plaintiff became upset and acted in an abusive, vulgar, and threatening manner toward Mr. Dugan. (Gallagher, ¶ 12, A-26).

Mr. Gallagher investigated Mr. Dugan's complaint. (Gallagher, ¶13, A-26). During his investigation, Mr. Gallagher spoke with multiple individuals who had witnessed Plaintiff's abusive conduct toward Mr. Dugan, and they confirmed Mr. Dugan's account. (Gallagher, ¶14, A-26). Based on Mr. Dugan's report and the verification by multiple witnesses of Plaintiff's vulgar, abusive and threatening conduct, Mr. Gallagher decided to ban Plaintiff from Ball's Delran, New Jersey plant. (Gallagher, ¶15, A-27).

At all times during February 2004, when Mr. Gallagher received Mr. Dugan's report, investigated it, and decided to ban Plaintiff from the plant, he did not know Plaintiff's race. (Gallagher, ¶17, A-27). Mr. Gallagher did not learn Plaintiff's race until he read the Charge of Discrimination that Plaintiff filed in September 2004. (Gallagher, ¶17, A-27). Race was not a factor in the decision to ban Plaintiff from Ball's Delran, New Jersey plant. (Gallagher, ¶18, A-27).

IV.    **LEGAL ARGUMENT**

    A.    **Plaintiff's Complaint Should Be Dismissed Because This Court Cannot Exercise Personal Jurisdiction Over Ball.**

Plaintiff has failed to allege facts sufficient to establish personal jurisdiction. Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action where the district court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2); see also William Rosenstein & Sons Co. v. BBI Produce, Inc., 123 F. Supp 2d 268, 269 (M.D. Pa. 2000). The plaintiff bears the burden of proving, by affidavits or other

competent evidence, that the court may properly assert jurisdiction over the defendant. William Rosenstein & Sons Co., 123 F. Supp 2d at 270; see also North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990).

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." William Rosenstein & Sons Co., 123 F. Supp. 2d at 270.  In Delaware, the determination of whether a defendant is subject to personal jurisdiction requires a two-part analysis. M& L of Delaware, Inc. v. Wallace, 2004 U.S. Dist. LEXIS 21863 *4 (D. Del. Oct. 18, 2004).[3]  First, the Court must determine whether the language of the Delaware long-arm statute, 10 Del. C. § 3104(c), reaches the defendant. Id. at *5.

Pertinent portions of the Delaware long-arm statute provide:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

 (1) Transacts any business or performs any character of work or service in the State;

 (2) Contracts to supply services or things in this State;

 . . . .

 (4) Causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 Del. C. § 3104(c).  Second, if the Court finds that that defendant's conduct gives rise to personal jurisdiction under the long-arm statute, the Court must then determine whether subjecting the defendant to jurisdiction in Delaware would comport with the Due

---

[3] A copy of this decision is attached for the Court's convenience as Exhibit 1.

Process Clause of the Fourteenth Amendment. <u>M& L of Del.</u>, 2004 U.S. Dist. LEXIS 21863 at *5.

The Third Circuit has held that foreseeability that the defendant's conduct would cause him to be hauled into court in the forum state is critical to the due process analysis. <u>Dollar Savings Bank v. First Security Bank of Utah, N.A.</u>, 746 F.2d 208, 210 (3d Cir. 1984). In examining due process, it must be recognized that personal jurisdiction over a nonresident defendant may be asserted in two situations. <u>Id.</u> The first, "general jurisdiction," exists when the claim does not arise out of or is unrelated to the defendant's contacts with the forum. <u>Id.</u> The second, "specific jurisdiction," is invoked when the claim is related to or arises out of the defendant's contacts with the forum. <u>Id.</u>

### 1.    Plaintiff Must Meet "General Jurisdiction" Standard

Plaintiff's claim that he was discriminated against based on his race in violation of Title VII is neither related to nor arises out of Ball's shipment of only three percent (3%) of its Delran, New Jersey plant's production to a customer in Delaware. Rather, Plaintiff's claim arises out of his abusive misconduct at the Delran, New Jersey plant, resulting in his inability to deliver products from the New Jersey plant to a customer in Pennsylvania. No contacts in Delaware are implicated. Accordingly, specific jurisdiction is neither present nor relevant to the due process analysis of whether this Court has personal jurisdiction over Ball. Rather, the due process issue here, to be considered only if it is determined that Delaware's long-arm statute reaches Ball, is whether general jurisdiction exists without violating constitutional due process.

Turning first to the determination of whether Delaware's long-arm statute reaches Ball, subsection (c)(1) pertaining to a defendant that "transacts any business" in Delaware does not apply here because Delaware courts interpret this subsection as a "specific

jurisdiction" provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. <u>M&L of Del.</u>, 2004 U.S. Dist. LEXIS 21863, at *6; <u>Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.</u>, 376 F. Supp. 2d 571, 572 (D. Del. 2005) (granting motion to dismiss for lack of personal jurisdiction). As discussed above, there is no nexus between Plaintiff's claim of race discrimination and Ball's minimal shipment of product to a customer in Delaware because none of that product was shipped by Plaintiff or his employer. Similarly, subsection (c)(2) pertaining to a defendant that "[c]ontracts to supply services or things in this State" does not apply here or support personal jurisdiction because it also is a specific jurisdiction provision requiring a nexus to the alleged discriminatory conduct. <u>LaNuova D&B, S.P.A. v. Bowe Co., Inc.</u>, 513 A.2d 764, 768 (Del. 1986).

Accordingly, if Delaware's long-arm statute reaches Ball, it must do so through subsection (c)(4). This subsection provides personal jurisdiction for tortious injuries caused by an act or omission outside the state "if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." 10 Del. C. § 3104(c)(4). Subsection (c)(4) previously has been held to include employment discrimination claims because they constitute the breach of a legal duty owed to another. <u>See</u> <u>Magid v. Marcal Paper Mills, Inc.</u>, 517 F. Supp. 1125, 1129 (D. Del. 1981) (holding that an age discrimination claim constitutes a "tortious injury" under subsection (c)(4) of the long-arm statute, but granting motion to dismiss for lack of personal jurisdiction on due process grounds). Thus, Plaintiff's race discrimination claim here may possibly be considered a "tortious injury" under subsection (c)(4), but it nevertheless would have to

7

satisfy the Fourteenth Amendment's due process requirements. Id. at 1128; World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L. Ed.2d 490 (1980);

International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Since subsection (c)(4) does not require a nexus between the tortious injury and the

defendant's conduct in Delaware, it is a "general jurisdiction" provision. Applied

Biosystems, Inc. v. Cruachem, Ltd., 772 F. Supp. 1458, 1469 (D. Del. 1991) (granting the

defendants' motion to dismiss for lack of personal jurisdiction because the defendants'

forum contacts were too few, too insubstantial, and too unrelated to the causes of action

asserted).

> **2.    General Jurisdiction's Heightened Standard of "Continuous and Systematic" Contacts Approximating "Physical Presence" Is Not Met.**

In general jurisdiction cases where the claims do not arise out of a defendant's

contacts with the forum state, due process requires that those contacts be "continuous and

systematic" before the defendant may be hauled into court. Fisher v. Teva PFC, SRL,

2005 U.S. Dist. LEXIS 18134 *8 (D. N.J. August 16, 2005)[4] citing Helicopteros

Nacianales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.

485 (1984). The general jurisdiction threshold the Plaintiff must meet for due process is

much higher than the specific jurisdiction standard. Id.    The facts required to assert

general jurisdiction must be "extensive and pervasive." Id., citing Reliance Steel Prods.

Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982). This higher

threshold demands contacts with the forum "that approximate physical presence." Id.

citing William Rosenstein & Sons Co., 123 F. Supp. 2d at 274; see also Helicopteros, 466

U.S. at 417-18, 104 S.Ct. 1868, 80 L.Ed.2d 404 (holding that trips to a forum state

relating to purchasing agreements, "even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of [that forum]") (quotes and citations omitted).

As stated above, Ball is a Colorado based manufacturing company with a plant in Delran, New Jersey, among other places. Ball does not have operations or maintain records in Delaware. Only three percent (3%) of the production from Ball's Delran, New Jersey facility is shipped by common carrier to a customer in Delaware, Pepsi Bottling Group. The minimal shipments are delivered by common carriers and are not related to Ball's banning Plaintiff from its New Jersey plant because of his abusive conduct at the facility. Plaintiff did not travel into Delaware for any purpose related to Ball.

Ball's minimal shipment of only 3% of its product through common carrier to a Pepsi Bottling Group in Delaware does not approximate physical presence in the state. Numerous District Courts have held that engaging in commerce with residents of a forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders necessary for personal jurisdiction.

In William Rosenstein & Sons Co., the plaintiff filed a defamation action in Pennsylvania against a competitor that it alleged published libelous statements in Florida. The court granted the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) because the small amount of business the defendant did with Pennsylvania purchasers (.05% of its sales) was not sufficient to put it on notice that it might be hauled into a Pennsylvania court. William Rosenstein & Sons Co., 123 F. Supp. 2d at 271-74. The court did not have specific jurisdiction because the defendant did not have minimum contacts, and the defendant could not meet the even higher standard of "continuous and

---

[4] A copy of this decision is attached for the Court's convenience as Exhibit 2.

substantial contacts" required for general jurisdiction. Id. at 274. Other courts have held likewise on similar facts. See, e.g., Orange Products, Inc. v. Winters, 1995 U.S. Dist. LEXIS 3443 (E.D. Pa. 1995) (no specific jurisdiction in employment dispute despite fact that defendant sold 2.7% of its precision balls within the forum state)[5]; Romann v. Geissenbertger Mfg. Corp., 865 F. Supp. 2d 255 (E.D. Pa. 1994) (no personal jurisdiction over employment dispute despite fact that defendant GMC made 2%-4% of its auto-related sales within the forum state); Allied Leather Corp. v. Altama Delta Corp., 785 F. Supp. 2d 494  (M.D. Pa. 1992) (no personal jurisdiction in suit over breach of leather purchase contract, despite fact that defendant sold 1% of its footwear in the forum state).

Consistent with these decisions, Ball's minimal business with a customer in Delaware does not rise to "continuous and substantial contacts" necessary to approximate "physical presence" in the state and satisfy due process.  Personal jurisdiction over Ball does not exist.  Plaintiff's Complaint should be dismissed.

**B.      Plaintiff's Complaint Should Be Dismissed Because Venue Does Not Lie in the District of Delaware.**

Plaintiff asserts a Title VII race discrimination claim against Ball.  As this Court has previously recognized, venue in Title VII cases is governed by the specific venue provisions of the statute, not by the general venue provisions of 28 U.S.C. §1391. Paige v. Solo Cup, 2002 U.S. Dist. LEXIS 14757 *1 (D. Del. August 6, 2002)[6]; see also 42 U.S.C. §2000e-5(f)(3).  Title VII sets forth four judicial districts where an employment discrimination action may be brought:

---

[5] A copy of this decision is attached for the Court's convenience as Exhibit 3.
[6] A copy of this decision is attached for the Court's convenience as Exhibit 4.

(1).    where "the unlawful employment practice is alleged to have been committed;"

(2).    where "the plaintiff would have worked but for the alleged unlawful employment practice;"

(3).    where "the employment records relevant to such practice are maintained and administered;" and

(4).    where the employer "has his principal office" if he cannot be found within the district where "the plaintiff would have worked but for the alleged unlawful employment practice."

Paige, 2002 U.S. Dist. LEXIS, at *2, citing 42 U.S.C. §2000e-5(f)(3). Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action where venue is improper. Under 28 U.S.C. §1406(a), "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406(a).

Here, Plaintiff alleges that the unlawful employment practice was committed "at 2900 Cindell Drive, Cinnaminson, New Jersey 08077." (Complaint ¶4, A-1). Thus, the alleged unlawful employment practice occurred within the District of New Jersey, Camden Division, and not within the District of Delaware. Accordingly, under the first statutory criteria for determining venue in a Title VII case, the proper district is New Jersey, not Delaware.

The same conclusion that venue is proper in New Jersey and improper in Delaware is reached examining the second and third statutory criteria. William Gallagher, Ball's Warehouse Manager for the Delran, New Jersey plant, relates that Plaintiff picked up loads for his employer, NFI, from the New Jersey plant. (Gallagher, ¶20, A-27; Haselden, ¶10, A-30). Ball does not have any facilities or operations in Delaware. (Estep, ¶5, A-24; Gallagher, ¶10, A-26). Thus, under criteria number two,

Plaintiff would have worked in New Jersey but for the alleged unlawful employment practice. He would not have worked in Delaware.

Mr. Gallagher also relates that any records still possessed by the company regarding shipments Plaintiff delivered would be maintained at the Delran, New Jersey facility. (Gallagher, ¶19, A-27). No records are maintained in Delaware. (Gallagher, ¶21, A-27). Accordingly, under statutory criteria number three, venue lies in New Jersey, not Delaware.

The fact that Plaintiff resides in Delaware is not significant in determining venue for Title VII claims. See Kravitz v. Institute for Int'l Research, Inc., 1993 U.S. Dist. LEXIS 15669 (E.D. Pa. November 5, 1993) (venue improper in the Pennsylvania district where the plaintiff lived because Title VII's venue criteria was not met)[7]; Rojas v. Trans State Airlines, Inc., 204 F.R.D. 265 (D. N.J. 2001) (venue in the district of New Jersey where the plaintiff resided was improper because Title VII's exclusive venue provisions were not met).

Since none of Title VII's venue requirements are met in Delaware, this Court should dismiss Plaintiff's Complaint.

---

[7] A copy of this decision is attached for the Court's convenience as Exhibit 5.

## V.    CONCLUSION

WHEREFORE, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted,

**TYBOUT, REDFEARN & PELL**

*/s/ David G. Culley*

**DAVID G. CULLEY, ESQUIRE**
**TIMOTHY S. MARTIN, ESQUIRE**
Delaware Bar I.D. No.:  2141
300 Delaware Avenue
Suite 1110
P.O. Box 2092
Wilmington, DE  19899
(302)  658-6901
E-mail Address:  dculley@trplaw.com
Attorneys for Defendant

Of Counsel
Bradley E. Strawn, Esquire
Littler Mendelson, PC
Three Parkway, Suite 1400
1601 Cherry Street
Philadelphia, PA  19102

DATED:  December 2, 2005

13

# EXHIBIT 1

LEXSEE 2004 US DIST LEXIS 21863

**M & L OF DELAWARE, INC., a Delaware corporation, Plaintiff, v. BENJAMIN WALLACE and JOSEPH MALONE, DVM, Defendants.**

**Civil Action No. 03-521-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 21863*

**October 18, 2004, Decided**

**DISPOSITION:** Malone's motion to dismiss was granted and Wallace's motion to dismiss was denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, a horse trainer and a veterinarian, moved to dismiss plaintiff horse owner's action for breach of contract, negligence, and trespass to chattels for lack of personal jurisdiction. The horse trainer also moved to dismiss the action for insufficient service of process.

**OVERVIEW:** The owner hired the trainer and agreed it have its horse shipped to Canada for training. The trainer decided that the horse should be castrated in order to improve its performance. The veterinarian performed the surgery in Canada. The owner brought an action against defendants to recover damages it allegedly suffered as a result of the castration. The veterinarian moved to dismiss for lack of personal jurisdiction. The trainer moved to dismiss for lack of personal jurisdiction and insufficient service of process. The court found that the trainer's horses took part in six races within the State of Delaware. The trainer held a racing license in Delaware. The trainer's actions in Delaware could be viewed as a kind of marketing because his actions in Delaware led the owner to contact him. No notions of fair play and substantial justice would be offended by requiring him to defend himself in Delaware. With respect to the veterinarian, the court found that, at the time of the incident, there were absolutely no contacts between him and Delaware. Finally, the court held that the trainer would not be unduly harmed by allowing the owner additional time to properly effect service of process.

**OUTCOME:** The court granted the veterinarian's motion to dismiss the action. The court denied the horse trainer's motions to dismiss the action.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN1] A plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendants. When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a prima facie case, with the record viewed in the light most favorable to the plaintiff.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN2] The determination of whether a defendant is subject to personal jurisdiction requires a two-part analysis. First, the court must determine whether the language of the Delaware long-arm statute, *Del. Code Ann. tit. 10, § 3104(c)*, reaches the defendant. Second, if the court finds that the defendant's conduct gives rise to personal jurisdiction under the long-arm statute, the court must then determine whether subjecting the defendant to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN3] The Delaware long-arm statute is construed broadly to confer jurisdiction to the maximum extent possible under the Due Process Clause of the Fourteenth Amendment. Nevertheless, a court begins its analysis with the Delaware long-arm statute.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN4] See *Del. Code Ann. tit. 10, § 3104(c)(1)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN5] Delaware state courts interpret the "transacting business" provision of *Del. Code Ann. tit. 10, § 3104(c)(1)* as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN6] Once it is determined that there is personal jurisdiction under the state long-arm statute, the court must look to ensure that the granting of specific personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. The United States Court of Appeals for the Third Circuit has held that foreseeability that the defendant's conduct would cause him to be hauled into court in the forum state is critical to the due process analysis. In particular, a defendant's deliberate attempt to enter, advertise, and promote itself can be sufficient to confer specific personal jurisdiction over the defendant. Even minimal marketing efforts are held sufficient to confer personal jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN7] Once it is decided that a defendant purposefully established minimum contacts within the forum state, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. The United States Court of Appeals for the Third Circuit has held that cases are rare in which minimum requirements in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction even though the defendant has purposefully engaged in forum activities.

*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations*
[HN8] *Fed. R. Civ. P. 4(m)* does not contain a time limit for serving foreign defendants.

**COUNSEL:** [*1] For M & L OF DELAWARE, INC., A DELAWARE CORPORATION, Plaintiff: Adam L. Balick, Balick & Balick Wilmington, DE.

For BENJAMIN WALLACE, Defendant: Adam Wyatt Poff, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For JOSEPH MALONE, DVM, Defendant: Robert J. Katzenstein, Smith, Katzenstein, & Furlow, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

### MEMORANDUM ORDER

### I. INTRODUCTION

M & L of Delaware, Inc., a Delaware corporation ("M&L" or "Plaintiff") filed suit against Benjamin Wallace ("Wallace") and Joseph Malone, D.V.M. ("Malone") alleging breach of contract, negligence, and trespass to chattels in connection with the castration of Plaintiff's horse known as "Mr. Commander." Subject Matter Jurisdiction is invoked under *28 U.S.C. § 1331.*

On October 2, 2003, Malone filed a motion to dismiss M&L's complaint for lack of personal jurisdiction. (Docket Item "D.I." 5.) On December 3, 2003, Wallace filed a motion to dismiss M&L's complaint for lack of personal jurisdiction and insufficient service of process. For the reasons set forth below, Malone's motion to dismiss is granted and Wallace's [*2] motion to dismiss is denied.

### II. BACKGROUND

Plaintiff is a corporation involved with the breeding and racing of standardbred horses. (D.I. 22, Ex. A at 1.) Wallace is a horse trainer who has previously traveled to Delaware to race horses and has sent here horses he has trained. (D.I. 24 at 2.) Having seen Wallace's horses in Delaware on one of those occasions, representatives of the Plaintiff contacted Wallace by telephone on May 28, 2002 to discuss the possibility of Wallace training Mr. Commander. (D.I. 22, Ex A at 2.) Shortly thereafter, the parties arranged to have Mr. Commander shipped to Ontario, Canada for training with Wallace. (*Id.*) After the horse arrived in Ontario, Wallace decided that, in order to improve the horse's performance, it should be castrated. (D.I. 19, Ex. A at 2.) He then called Malone, a veterinary doctor, and engaged his services to castrate Mr. Commander. (*Id.*) Malone performed the surgery in Ontario on June 6, 2002. (*Id.*) After learning of Mr. Commander's castration M&L, had the horse transferred to another trainer. (D.I. 22, Ex. A at 2.)

Wallace does not have a place of business in Delaware, nor does he advertise in Delaware or [*3] maintain a website. (D.I. 24 at 1, 5-6.) From 1999 through 2002, horses trained by Wallace raced in Delaware on six occasions. (D.I. 22, Ex. E.) Wallace personally attended two races in 1999; he did not attend the other abovementioned races. (D.I. 24 at 2.) Horses trained by Wallace have won $ 62,397 in Delaware. (D.I. 22, Ex. E.) From at least 1999 through 2002, Wallace had a license to train horses in Delaware and has been listed as the trainer of record for horses he has sent here. (D.I. 24, Ex.

A; D.I. 22, Ex. F at 41; D.I. 22, Ex. E.) Delaware law prohibits trainers from taking part in races without first obtaining a permit. (D.I. 22, Ex. Fat 41.)

While Malone has performed work for the Plaintiff and at one time was licensed as a Veterinarian in Delaware, that license lapsed in 2000, and, at the time he performed the surgery at issue, he had no ties to Delaware. (D.I. 11 at 4-5; D.I. 6, EX. 1.) Malone maintains a website that is accessible in Delaware. (D.I. 11, Ex D.) With respect to the surgery, Malone had no contact with the Plaintiff or anyone else in Delaware.

On May 30, 2003, Plaintiff filed a complaint against Wallace and Malone to recover damages it allegedly suffered [*4] as a result of Mr. Commander's castration. (D.I. 1.) In August of that year, Plaintiff attempted to serve Wallace in Ontario, however, this attempt did not satisfy the requirements for service under the Hague Convention for service in Canada. *See infra* at 7. Plaintiff maintains that it is now in the process of serving Wallace under the Hague Convention. (D.I. 22 at 9-20.)

### III. DISCUSSION

[HN1] The plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over the defendants. *Intel Corp. v. Broadcom Corp., 167 F. Supp. 2d 692, 699 (D. Del. 2001).* When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case, with the record viewed in the light most favorable to the plaintiff. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., 1999 U.S. Dist. LEXIS 12455 at *5-6 (D. Del. Aug. 3, 1999); Siemens Aktiengesellschaft v. LG Semicon Co., Ltd., 69 F. Supp. 2d 622, 624 (D. Del. 1999).*

[HN2] The determination of whether a defendant is subject to personal jurisdiction requires a two-part analysis. *Broadcom, 167 F. Supp. 2d at 700:* [*5] *Siemens, 69 F. Supp. 2d at 624; Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293 (3d Cir. 1985).* First, the court must determine whether the language of the Delaware long-arm statute, *10 Del. C. § 3104(c),* reaches the defendant. *Broadcom, 167 F. Supp. 2d at 700.* Second, if the court finds that the defendant's conduct gives rise to personal jurisdiction under the long-arm statute, the court must then determine whether subjecting the defendant to jurisdiction in Delaware would comport with the *Due Process Clause of the Fourteenth Amendment. Id.* (citing *Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)).*

[HN3] The Delaware long-arm statute has been construed "broadly...to confer jurisdiction to the maximum extent possible under the due process clause." *La Nuova D & B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del.*

*1986).* Nevertheless, the Court begins its analysis with the Delaware long-arm statute.

Pertinent portions of the Delaware long-arm statute provide:

(c) [HN4] As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court [*6] may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

***

(1) Transacts any business or performs any character of work or service in the State;

*10 Del. C. § § 3104(c)(1), (c)(3) & (c)(4).* [HN5] Delaware state courts have interpreted the "transacting business" provision of *§ 3104(c)(1)* as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *See La Nuova, 513 A.2d at 768.*

[HN6] Once it is determined that there is personal jurisdiction under the state long-arm statute, the court must look to ensure that the granting of specific personal jurisdiction comports with the *Due Process Clause of the Fourteenth Amendment. Broadcom, 167 F. Supp. 2d at 700.* The Third Circuit has held that foreseeability that the defendant's conduct would cause him to be hauled into court in the forum state is critical to the due process analysis. In particular, a "defendant's deliberate attempt to enter, advertise and promote itself" can be sufficient to confer specific personal jurisdiction over defendant. *United States Golf Asso. v. U.S. Amateur Golf Asso., 690 F. Supp. 317, 320 (D.N.J. 1988)* [*7] (holding that where a defendant has no connections to the state in question, a direct mail solicitation to the plaintiff was adequate to confer personal jurisdiction.) Even

minimal marketing efforts have been held sufficient to confer personal jurisdiction. *See Clay v. Hopperton Nursery, Inc., 533 F. Supp. 476, 478 (D. Ky. 1982)* (holding that where a defendant advertised in a trade journal that had 152 subscribers in the state in question, and the plaintiff only vaguely recalled seeing the ad, the exercise of personal jurisdiction was nevertheless appropriate.)

[HN7] Once it has been decided that a defendant purposefully established minimum contacts within the forum State, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (U.S. 1985)* (internal citations omitted). The Third Circuit has held that cases are "rare . in which minimum requirements in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully [*8] engaged in forum activities." *Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 207 (3d Cir. 1998)* (internal citations omitted).

A. Personal Jurisdiction of Wallace

Of note in this case, Wallace's horses took part in six races over a two and a half year period within Delaware. (D.I. 22, Ex. E.) As the trainer of record for these races, Wallace was prominently listed as the trainer of the horses in the U.S. Trotting Association Literature. (D.I. 22, Ex C-E.) For the privilege of training horses that competed in Delaware, Wallace had to, and did, obtain a racing license in Delaware. (D.I. 24, Ex. A at 1.) As Wallace is a seasoned horse trainer it is reasonable to assume that he was aware that his name would be listed and accessible by people watching races in Delaware. Consequently, it was foreseeable that people involved in the horse racing industry would watch the races in Delaware and contact Wallace, based, at least partially, on the performance of the horses he

trained. In fact, from watching Wallace's trained horses excel at such races, Plaintiff decided to contact him and contract for his services. (D.I. 22, Ex A.) Wallace's efforts in Delaware can [*9] properly be viewed as a kind of marketing, and because Wallace's actions in Delaware led Plaintiff to contract with him and the alleged injury resulted from that contract, the necessary nexus is present under Delaware's long-arm statute *section 3104(c)(1)*.

Notions of fair play and substantial justice will not be offended by requiring Wallace to defend himself here. He has trained horses that have won a more than *de minimis* sum in Delaware (D.I. 22, Ex. E), and as the trainer of record his compensation is derived from the horses winnings in Delaware. Additionally, as earlier noted, Wallace was listed as the trainer of the horses that raced here and acquired name recognition among race enthusiasts, including Plaintiff. Consequently, Wallace can fairly be haled into court in Delaware. I therefore hold that this court has personal jurisdiction over Wallace.

B. Personal Jurisdiction of Dr. Malone

With respect to Dr. Malone, at the time of the incident there were absolutely no contacts between him and Delaware. The Plaintiff argues that Dr. Malone's professional relationship with Plaintiff, maintenance of his website, and his professional obligation to obtain informed consent [*10] before castrating Mr. Commander constitute the minimum contacts necessary to support a finding of personal jurisdiction over Dr. Malone. (D.I. 11 at 8-9.) None of these acts are fairly seen as having occurred in Delaware or having arisen from acts occurring in Delaware, and as such, none of them can be used to establish personal jurisdiction. n1 *See La Nuova, 513 A.2d at 768.* Therefore, I hold that the court lacks personal jurisdiction over Malone.

n1 The website is not alleged to be interactive or to otherwise be a vehicle for transacting business in Delaware. *See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454-55 (3d Cir. 2003)* (holding that the operator of a commercially interactive website, without specifically directing its selling towards the residents of the forum in question, is not subject to jurisdiction there.)

C. Wallace's Service of Process

Lastly, Wallace argues that he was not properly served under the Hague Convention and that the complaint against [*11] him should therefore be dismissed. (D.I. 19 at 12.) On October 21, 2003, a process server delivered the Summons, Complaint and Civil Coversheet to Wallace, who signed that he had received the documents. (D.I. 22, Ex. J.) This service is insufficient under the Hague Convention. n2 *(D.I. 24 Ex. 1.)* [HN8] *Federal Rule of Civil Procedure 4(m),* however, does not contain a time limit for serving foreign defendants. Additionally, Wallace is aware of this litigation, as he has submitted briefs to this court opposing personal jurisdiction. Therefore, I find that Wallace is not unduly harmed by allowing Plaintiff additional time to properly effect service of process.

n2 The Hague Convention requires that all documents be forwarded to Canada's central process server. *See* HAGUE CONVENTION ON SERVICE ABROAD OF JUDICIAL AND EXTRA JUDICIAL DOCUMENTS IN CIVIL AND COMMERCIAL MATTERS, LEXIS *20 U.S.T. 361, 16-18 (1969).* In this case the documents were not delivered through the central process server, and, consequently, service was not effective.

[*12]

IV. CONCLUSION

Therefore, it is hereby ORDERED that Defendant Benjamin Wallace's Motion to Dismiss (D.I. 18) is DENIED, and Defendant Joseph Malone, D.V.M.'s Motion to Dismiss (D.I. 5) is GRANTED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

October 18, 2004
Wilmington, Delaware

# EXHIBIT 2

LEXSEE 2005 US DIST LEXIS 18134

**WANDA FISHER; SCOTT FISHER, husband and wife, Plaintiffs, v. TEVA PFC, SRL, an Israeli corporation formerly known as INDUSTRIA CHIMICA FARMACEUTICA ITALIANA, SRS, an Italian corporation and also formerly known as ALFA CHEMICALS ITALIANA, an Italian corporation, Defendant.**

Civil No. 04-CV-2780 (JLL)

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2005 U.S. Dist. LEXIS 18134*

**August 15, 2005, Decided**
**August 16, 2005, Filed**

**NOTICE:** [*1]  NOT FOR PUBLICATION

**PRIOR HISTORY:** *Fisher v. Prof'l Compounding Ctrs. of Am., Inc., 318 F. Supp. 2d 1046, 2004 U.S. Dist. LEXIS 9319 (D. Nev., 2004)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, Nevada individuals, sued defendants, Italian corporations. The matter was before the court on the corporations' motion for summary judgment for lack of personal jurisdiction. The individuals also moved to strike a certain declaration.

**OVERVIEW:** The instant action involved Nevadan individuals, who were allegedly injured nowhere near New Jersey, and an Italian corporation with only tenuous contacts with the forum. The record reflected three types of contacts that the corporation had with the State of New Jersey: (1) a distribution agreement with a New Jersey-based corporation, (2) New Jersey visits by employees, and (3) general product sales to New Jersey corporations. However, the corporation's contacts with New Jersey were neither continuous nor systematic. The corporation owned no property, had no employees, kept no bank accounts, operated no offices, maintained no mailing address, and had designated no agent for service of process in New Jersey. Consequently, an exercise of general in personam jurisdiction over the corporation would not comport with due process. New Jersey had absolutely no interest in the lawsuit, haling the corporation into the instant court from Italy would be tremendously burdensome, and plaintiffs, having lost on this very issue in Nevada, appeared to be shopping for any forum within which to sue this particular foreign corporation.

**OUTCOME:** The individuals' motion to strike the declaration was denied, and the corporation's motion for summary judgment for lack of personal jurisdiction was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN1] Specific jurisdiction is properly exercised only when a defendant's contacts with the forum state give rise to the asserted claims.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN2] When civil claims do not arise out of a defendant's contacts with the forum state, due process requires that those contacts be "continuous and systematic" before that defendant may be haled into court. Obviously this is a much higher threshold to meet for the facts required to assert this "general" jurisdiction must be "extensive and persuasive." This higher threshold demands contacts with the forum "that approximate physical presence."

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN3] Somewhat frequent visits with an independent distributor in furtherance of a broad, exclusive distribution agreement--do not, in one court's opinion, justify an inference that a corporate defendant is continuously and systematically "present" in New Jersey.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN4] Engaging in commerce with the forum state is not in and of itself the kind of activity that approximates

physical presence within the state's borders. It amounts to doing business with the state, not in the state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN5] It would be patently unfair to allow any and all plaintiffs to sue a defendant in New Jersey, simply because defendant makes a small part of its sales to New Jersey purchasers.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN6] The reasonableness analysis for personal jurisdiction purposes entails consideration of, among other things, the burden on defendant, the state's interest in this dispute, the interstate judicial system's interest in efficient resolutions of controversies, and the importance of the state to plaintiffs' interest in effective and convenient relief.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN7] In dealing with foreign defendants, in particular, the United States Supreme Court has warned that great care and reserve should be exercised when extending notions of personal jurisdiction into the international field.

COUNSEL: For WANDA FISHER, SCOTT FISHER, Plaintiffs: MARC C. SAPERSTEIN, DAVIS, SAPERSTEIN & SALOMON, PC, TEANECK, NJ.

For TEVA, PFC, SRL AN ISRAEL CORPORATION, AN ITALIAN CORPORATION, AN ITALIAN CORPORATION FORMERLY KNOWN AS INDUSTRIA CHIMICA FARMACEUTICA ITALIANA, SRS FORMERLY KNOWN AS ALFA CHEMICALS ITALIANA, Defendant: DONALD W. KIEL, KIRKPATRICK & LOCKHART, LLP, NEWARK, NJ.

JUDGES: LINARES, District Judge.

OPINIONBY: Jose L. Linares

OPINION:

OPINION

Introduction

This matter is before the Court on defendant's motion for summary judgment for lack of personal jurisdiction. The Court has considered the submissions in support of and in opposition to the motion, as well as the oral arguments advanced on May 18, 2005. For the reasons set forth below, defendant's motion is GRANTED.

Background

As the Court writes only for the parties, it will not revisit the facts. Defendant n1 has (or had) the following contacts with the State of New Jersey:

> (1) an agency agreement with Vinchem Inc. USA, a New Jersey company, for the promotion of U.S. sales, which agreement commenced in 1989 and was terminated on December 31, 1996;
>
> (2) a series of visits by defendant's [*2] employees to Vinchem from 1989 to 1996; and
>
> (3) direct shipments of fenfluramine samples from defendant to New Jersey companies Invamed, PurePac, and Ohm Laboratories in 1996, as well as current and past sales of products (other than fenfluramine) to an unrelated affiliate located in New Jersey.

> n1 The term "defendant," of course, refers to any of the corporate manifestations of Teva PFC during the relevant time period: PFC Italiana, Honeywell PFC, Alfa Chemicals Italiana, ICF Italiana, etc.

The Court recognizes the dispute over whether defendant, when it was PFC Italiana, maintained an office in Bedminster, New Jersey, or whether the Bedminster office was that of a separate corporate entity, PFC U.S.A. Having considered the arguments and evidence before it, the Court resolves this issue in favor of defendant. At oral argument, counsel for plaintiffs suggested that PFC U.S.A. did not exist. (See Tr. of 5/18/05 at 39:1-40:19.) The evidence, however, directly refutes that contention. Specifically, [*3] on June 13, 1998, Delaware's Secretary of State certified the merger of PFC U.S.A., which she identified as a Delaware corporation, with Allied-Signal, Inc. (See Certificate of Merger of 6/13/98.) Also, on June 19, 1998, Kathleen Gianetti, who worked at the Bedminster office, forwarded her resignation as a director to PFC U.S.A. (See Letter from Gianetti to PFC U.S.A. of 6/19/98.) Moreover, the employment agreement Ms. Gianetti signed in June 1998 with AlliedSignal identifies her employer as PFC U.S.A. In particular, the agreement states that "[Ms. Gianetti] has been employed by PFC USA under an agreement between PFC USA, Pharmaceutical Fine Chemicals S.A. ('PFC') and [Ms. Gianetti] dated February 15, 1998 ... ." (AlliedSignal

Employment Agreement of 6/4/98, at 1.) All of this evidence shows that PFC U.S.A. did in fact exist, and that one of its employees, Ms. Gianetti, ran an office out of Bedminster, New Jersey. n2

n2 Plaintiffs' motion to strike the third declaration of Amy Richter is DENIED. First, plaintiffs' argument that the declaration and exhibits are contradicted by other testimony is directed to the weight of these submissions, not their admissibility, authenticity, and the like. Second, with respect to Ms. Richter's competence as an affiant, the Court notes that it is relying primarily on the exhibits themselves, rather than Ms. Richter's commentary as to their import. Ms. Richter, as a paralegal at Honeywell International, is certainly competent to testify as to how and where she obtained the Honeywell records appended to her certification (see Third Richter Decl. PP 1-2), and in the absence of evidence of fraud or fabrication, the Court considers these records in the disposition of this motion. Third, while the Court appreciates plaintiffs' argument concerning timeliness, the Court is within its discretion to excuse the lateness of these submissions. As discussed, plaintiffs' counsel asserted at oral argument that PFC U.S.A. never even existed, and given the potentially dispositive nature of this particular factual dispute, see generally *Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413, 63 Ohio Law Abs. 146 (1952)*, the Court will not disregard highly probative evidence for technical reasons.

[*4]

The only evidence that plaintiffs have marshaled in support of their contention that the Bedminster office was run by defendant instead of a separate corporate entity is the deposition testimony of a Vinchem employee, Vincent Ursino, that defendant fired Vinchem to set up its own office in New Jersey, and the deposition of Ms. Gianetti, during which she appeared to state that she worked for PFC Italiana, PFC U.S.A., or both. Mr. Ursino's testimony, in addition to being inadmissible -- it appears to be both hearsay and speculative, see *Fed. R. Evid. 602, 801(c)* -- is not even particularly probative. He testifies that defendant planned to open a "sales office" in New Jersey, and that defendant did eventually have such an office at which Ms. Gianetti worked (Ursino Dep. at 42:12-43-20), but he states nothing concerning whether that office was actually operated by defendant or merely by a separate entity (i.e., PFC U.S.A.). As for Ms. Gianetti's testimony, it reveals nothing more than that she may have worked for both PFC Italiana and PFC U.S.A.

(See Gianetti Dep. at 14:2-15, 16:23-17:1.) She offers no insight into whether the Bedminster office was operated by PFC Italiana or [*5] PFC U.S.A. Furthermore, her employment agreement with AlliedSignal indicates that Ms. Gianetti was an employee of PFC U.S.A., not PFC Italiana, during a four-month period in 1998. (See AlliedSignal Employment Agreement of 6/4/98, at 1.) While this is not evidence that Ms. Gianetti was not working for PFC Italiana in New Jersey before commencement of her employment with PFC U.S.A. in February 1998, there is nothing in the record indicating a transfer of ownership or control of the Bedminster office from PFC Italiana (i.e., defendant) to PFC U.S.A. at that time. Indeed, there is no documentary evidence linking PFC Italiana, as opposed to PFC U.S.A., to the Bedminster office at any time. For all these reasons, the Court will not consider this office a New Jersey "contact" for purposes of its jurisdictional analysis. n3

n3 The Court also does not consider it particularly relevant that defendant, while it was owned by Honeywell International, reported to Honeywell in New Jersey. (See Pls.' Br. at 24-26.) Honeywell International is not a party to this action, and this Court is not about to impute a parent company's New Jersey actions to its Italian subsidiary. Cf. *Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004)* (subsidiary's forum contacts not imputed to parent without a showing of agency, alter ego, or the like).

[*6]

In sum, the record reflects three types of contacts that defendant has with the State of New Jersey: (1) a distribution agreement with a New Jersey-based corporation, (2) New Jersey visits by employees, and (3) general product sales to New Jersey corporations. n4 The Court now addresses the law to be applied to defendant's contacts with this forum.

n4 The Court acknowledges that it may have excluded certain events which might constitute "contacts" with the State of New Jersey. Nevertheless, having thoroughly reviewed the record in this case, the Court has not discovered any State contacts that would not fall under one of the three categories just enumerated, namely, distribution agreements, visits, and sales.

**Discussion**

I. *Specific In Personam Jurisdiction*

Preliminarily, the Court dispenses with the notion that it may exercise specific personal jurisdiction over this action. [HN1] Such jurisdiction is properly exercised only when a defendant's contacts with the forum state give rise to the [*7] asserted claims. n5 *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). There is no evidence on the record that any of defendant's contacts with the State have anything to do with plaintiffs' claims. Cf. *Fisher v. Prof'l Compounding Ctrs. of Am., Inc.*, 311 F. Supp. 2d 1008, 1014 (D. Nev. 2004) (holding lack of specific in personam jurisdiction over near-identical claims by these very plaintiffs against this very defendant, because those claims arose out of activities in Utah). To the contrary, it appears beyond dispute that plaintiff Wanda Fisher was prescribed fen/phen in Utah, procured it there, and ingested it there. See *id. at 1010-11; Fisher v. Prof'l Compounding Ctrs. of Am., Inc.*, 318 F. Supp. 2d 1046, 1050-51 (D. Nev. 2004) ("Fisher II"). The Court therefore turns to the issue of general in personam jurisdiction.

n5 New Jersey law permits courts to exercise jurisdiction over non-residents to the full extent of the *Due Process Clause of the U.S. Constitution.* N.J. Sup. Ct. R. 4:4-4(c)(1). Accordingly, the Court's jurisdictional analysis concerns itself solely with due process under the *Fourteenth Amendment.* See *Fed. R. Civ. P.* 4(k)(1)(A) (federal jurisdiction extends as far as forum state law permits).

[*8]

## II. *General In Personam Jurisdiction*

[HN2] When civil claims do not arise out of a defendant's contacts with the forum state, due process requires that those contacts be "continuous and systematic" before that defendant may be haled into court. *Helicopteros*, 466 U.S. at 414-15, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 96 L. Ed. 485, 72 S. Ct. 413, 63 Ohio Law Abs. 146 (1952)). "Obviously this is a much higher threshold to meet for the facts required to assert this 'general' jurisdiction must be 'extensive and persuasive.'" *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (citation omitted). This higher threshold demands contacts with the forum "'that approximate physical presence.'" *William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F. Supp. 2d 268, 274 (M.D. Pa. 2000) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086

(9th Cir. 2000)); see also *Helicopteros*, 466 U.S. at 417-18, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (holding that trips to a forum state relating to purchasing agreements, "even if occurring at regular intervals, would not warrant the inference that the [*9] corporation was present within the jurisdiction of [that forum]") (quotes and citation omitted).

The Court finds that defendant's contacts with the State of New Jersey are insufficiently continuous and systematic to support the exercise of jurisdiction over this action.

First, the in-state presence and activities of Vinchem, with whom defendant had a distribution agreement during the relevant time period, may not be imputed to defendant. This Court must respect the distinct corporate identities of these entities, unless there is sufficient evidence to demonstrate that Vinchem was acting as an agent or "alter ego" of defendant. See *Seltzer*, 339 F. Supp. 2d at 609; see also *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 262-63 (3d Cir. 2000) (refusing to pierce corporate veil and assert general jurisdiction over one entity for the activity of another). The agreement between Vinchem and defendant granted the former the "exclusive right of promoting the sale of [defendant's] Products in the [United States]" but stated that "neither the above grant nor anything else contained in this Agreement shall be construed as giving to [Vinchem] [*10] the power of legally representing [defendant's parent] and binding it as the principal in any representation, commitment or agreement made by [Vinchem] in connection with the sale of the Products." (Agency Agreement Between Alfa Wasserman S.p.A. & Vinchem Inc. USA, art. II, PP 1-2.) This language is an express disavowal of an agency relationship, see *Seltzer*, 339 F. Supp. 2d at 609 (setting forth the distinction between an agent and independent contractor), and the Court upholds it.

Second, defendant's employees' visits to Vinchem in New Jersey were neither continuous nor systematic. Plaintiffs' proof of these visits is found solely in the deposition testimonies of Mr. Ursino and Claudio Cremonesi, one of defendant's employees. Mr. Ursino, however, testified only that Mr. Garabaldi, a representative of defendant, visited New York perhaps once a year (Ursino Dep. at 13:6-14:9), that Mr. Garibaldi's successor visited "either ... New York or New Jersey" at least once a year (id. at 15:4-13), and that other of defendant's employees visited New York or New Jersey on a few occasions (id. at 15:25-18:21). Likewise, Mr. Cremonesi's testimony -- at least those [*11] portions submitted by plaintiffs -- demonstrates only that he visited the "United States" up to three times a year (Cremonesi Dep. at 47:11-25), and that Franco Tossi, another employee of defendant, visited Vinchem in the "United States on occasion" (id. at 50:4-

16). Insofar as any of Mr. Ursino's or Mr. Cremonesi's testimony establishes New Jersey visits at all, under no fair interpretation of the words "continuous" or "systematic" could these supposed contacts be viewed as such. Also, business trips of this nature -- that is, [HN3] somewhat frequent visits with an independent distributor in furtherance of a broad, exclusive distribution agreement -- do not, in this Court's opinion, justify an inference that a corporate defendant was continuously and systematically "present" in New Jersey. See *Helicopteros, 466 U.S. at 417-18, 80 L. Ed. 2d 404, 104 S. Ct. 1868* (finding visits for personnel training insignificant for purposes of general jurisdiction); *Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 518, 67 L. Ed. 372, 43 S. Ct. 170 (1923)* (finding visits incident to a purchasing arrangement with wholesalers unsupportive of an inference of presence within the forum state).

Third, defendant's sales in the [*12] State of New Jersey are far too unsubstantial to justify an exercise of general in personam jurisdiction, even when considered in combination with the other limited forum contacts.[HN4] Engaging in commerce with the forum state "is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Augusta Nat'l, 223 F.3d at 1086*. It amounts to doing business with the State, not in the State. Id. The sales at issue here, many of which are either highly speculative (see Pls.' Br. at 11-13) or arranged indirectly through an independent distributor (see id. at 5 n.5), resemble the types of sales that have been held insufficient to constitute in-state presence. See, e.g., *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1124-25 (9th Cir. 2002)* (holding that defendant's contacts with California, which included an in-state independent distributor and sixteen direct rice shipments into the state, were insufficient for general jurisdiction); *Seltzer, 339 F. Supp. 2d at 612* (holding that direct sales to New Jersey and other relevant contacts were insufficient for [*13] general jurisdiction). [HN5] "It would be patently unfair to allow any and all plaintiffs to sue [defendant] in [New Jersey], simply because [defendant] makes a small part of its ... sales to [New Jersey] purchasers." *BBI Produce, 123 F. Supp. 2d at 274*. These sales are simply not significant enough for an assertion of jurisdiction in a forum with absolutely no relation to the claims in this action.

To recapitulate, defendant's contacts with New Jersey -- namely, its distributor agreements, sporadic employee visits, and a tiny percentage of its sales -- are neither continuous nor systematic. Defendant owns no property, has no employees, keeps no bank accounts, operates no offices, maintains no mailing address, and has designated no agent for service of process in New Jersey. Consequently, an exercise of general in personam jurisdiction over this defendant would not comport with due process.

III. *Reasonableness*

Finally, the Court notes that, even if defendant had the requisite contacts with the State as a technical matter, an exercise of jurisdiction would be unreasonable; that is, it would fail to comport with "traditional notions of fair play and substantial [*14] justice." *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)* (citation omitted). [HN6] The reasonableness analysis entails consideration of, among other things, the burden on defendant, the State's interest in this dispute, the interstate judicial system's interest in efficient resolutions of controversies, and the importance of this State to plaintiffs' interest in effective and convenient relief, *Glencore Grain, 284 F.3d at 1125*, all of which counsel heavily against an assertion of jurisdiction over this action, which involves Nevadan plaintiffs, who were allegedly injured nowhere near this State, and an Italian defendant with only tenuous contacts with the forum. [HN7] "In dealing with foreign defendants, in particular, the Supreme Court has warned that 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" *Seltzer, 339 F. Supp. 2d at 613* (quoting *Asahi, 480 U.S. at 115, 94 L. Ed. 2d 92, 107 S. Ct. 1026*). New Jersey has absolutely no interest in this lawsuit, haling defendant into this Court from Italy would be tremendously burdensome, and plaintiffs, having lost on this [*15] very issue in Nevada, see *Fisher II, 318 F. Supp. 2d at 1050*, appear to be shopping for any forum within which to sue this particular foreign defendant. As a result, this Court could not exercise jurisdiction here without offending traditional notions of fair play and substantial justice.

**Conclusion**

For the reasons set forth above, plaintiffs' motion to strike the third declaration of Amy Richter is DENIED, and defendant's motion for summary judgment for lack of personal jurisdiction is GRANTED.

DATED: August 15, 2005

/s/ Jose L. Linares

United States District Judge

ORDER

For the reasons set forth in the Court's Opinion of August 15, 2005, plaintiffs' motion [35] to strike the declaration of Amy Richter is DENIED, and defendant's motion for summary judgment [20] is GRANTED. This action is dismissed.

Dated: August 15, 2005

2005 U.S. Dist. LEXIS 18134, *

/s/ Jose L. Linares                                    United States District Judge

# EXHIBIT 3

LEXSEE 1995 US DIST LEXIS 3443

**ORANGE PRODUCTS, INC., Plaintiff, v. HOWARD WINTERS and
ENGINEERING LABS, INC., Defendants.**

CIVIL ACTION NO. 94-CV-6004

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

*1995 U.S. Dist. LEXIS 3443*

**March 21, 1995, Decided
March 21, 1995, FILED, ENTERED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation filed
suit against defendant employee and defendant employer,
alleging the employee, and by extension the employer,
breached a covenant not to compete. Subsequently, the
employee and employer filed a joint motion to dismiss
for lack of jurisdiction and for improper venue pursuant
to *Fed. R. Civ. P. 12(b)(2)* and (3), respectively, and,
alternatively, to transfer venue pursuant to *28 U.S.C.S. §
1404.*

**OVERVIEW:** In its complaint, the corporation alleged
there was likely to be evidentiary support to prove the
employee disclosed or used the confidential information
acquired during his employment with the corporation for
the purpose of furthering the employer's business as a
competitor of the corporation. The corporation contended
such disclosures would have caused irreparable harm to
its business and sought to enjoin any further disclosures.
Regarding the joint motion to dismiss for lack of juris-
diction, the court found jurisdiction existed over the em-
ployee because he purposefully availed himself of the
privileges of conducting activities in the forum state by
continuing his employment with the corporation after its
relocation to the forum state. The court, however, held
dismissal of the employer was warranted because neither
general nor specific jurisdiction existed over the em-
ployer. The court held a transfer was not appropriate
because the employee and employer did not sufficiently
demonstrate cause to transfer the case and override the
corporation's choice of a proper forum.

**OUTCOME:** The court denied dismissal of the corpora-
tion's complaint as to the employee and granted dismissal
of the complaint as to the employer. In addition, the

court denied the request by the employee and the em-
ployer to transfer venue.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Personal Jurisdiction*
[HN1] *Fed. R. Civ. P 4(e)* establishes a federal court may
exercise personal jurisdiction over a non-resident defen-
dant to the extent permitted by the state in which it sits.

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Constitutional Limits*
[HN2] *42 Pa. Cons. Stat. Ann. § 5322(b)* (long-arm stat-
ute) provides jurisdiction may be exercised to the fullest
extent allowed under the Constitution of the United
States and may be based on the most minimum contact
with the commonwealth allowed under the Constitution
of the United States.

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Personal Jurisdiction
Civil Procedure > Pleading & Practice > Defenses, Ob-
jections & Demurrers > Motions to Dismiss*
[HN3] When a personal jurisdiction defense is raised, the
plaintiff must establish either that the cause of action
arose from the forum-related activities of the defendant
(specific jurisdiction) or that the defendant has continu-
ous and systematic contacts with the forum state (general
jurisdiction). Under this standard, the plaintiff is required
to sustain its burden of proving, through affidavits or
other competent evidence, the court has in personam
jurisdiction. It is not enough for the plaintiff to rely on
the pleadings alone in order to withstand a defendant's
motion to dismiss under *Fed. R. Civ. P. 12(b)(2)*; instead,
the plaintiff must respond to the defendant's motion with
affidavits, and actual proofs, not mere allegations.

1995 U.S. Dist. LEXIS 3443, *

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN4] In determining whether exercise of specific jurisdiction is fair, the court examines whether the defendant purposefully availed itself of the privilege of conducting activities within the forum, whether the cause of action arose from the defendant's activities within the forum, and, whether the defendant's actions in the forum state were substantial enough to make the exercise of jurisdiction over it reasonable. In sum, the defendant's contacts with the forum must rise to a level such that the defendant would be able to reasonably anticipate being haled into court in the forum state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN5] The touchstone of specific jurisdiction is that its exercise must be confined to causes of actions which arise from the non-resident corporate defendant's contacts with the forum state.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN6] *28 U.S.C.S. § 1404*(a) provides, for the convenience of parties and witnesses, in the interest of justice, a court may transfer any civil action to any other district or division where it might have been brought.

COUNSEL: [*1] For ORANGE PRODUCTS, INC., PLAINTIFF: MALCOLM J. GROSS, GROSS, MC GINLEY, LA BARRE & EATON, ALLENTOWN, PA.

For HOWARD WINTERS, DEFENDANT: MICKEL R. SAMPSON, CUCCIO AND CUCCIO, HACKENSACK, NJ. For ENGINEERING LABS, INC., DEFENDANT: EMIL S. CUCCIO, CUCCIO AND CUCCIO, HACKENSACK, NJ.

JUDGES: Assigned to: JUDGE RONALD L. BUCKWALTER

OPINIONBY: RONALD L. BUCKWALTER

OPINION:

   MEMORANDUM

BUCKWALTER, J.

   March 21, 1995

   Before the court is defendants' Joint Motion to Dismiss for Lack of Jurisdiction and for Improper Venue pursuant to *Fed.R.Civ.P. 12(b)(2)* and (3), respectively, and, alternatively to Transfer Venue to the District of New Jersey. For the reasons outlined below, defendants' Motions are granted in part and denied in part.

I. BACKGROUND

   In October of 1994, plaintiff filed a complaint against defendants alleging that defendant Howard Winters ("defendant Winters"), and by extension defendant Engineering Labs, Inc. ("defendant Engineering"), breached an employment agreement which plaintiff maintains contained a covenant not to compete. Plaintiff is a company in the business of manufacturing plastic balls for use in roll-on deodorants and other products. Defendant Winters [*2] began his employment with NASCO International, Inc. ("Nasco"), plaintiff's parent company, in 1979. On or about June 21, 1984 defendant Winters entered into an employment agreement with Nasco. The agreement was signed and entered in Chatham, New Jersey and its terms stipulated that defendant Winters was to refrain from the use of any "trade secrets and/or proprietary rights in any manner contrary to the interests of NASCO" for a period of five years after termination of his employment. In 1986, Nasco sold Orange Products, Inc. to its present owners Mr. Sachdev and Mr. Verdi who continued to operate the business at the Chatham location until 1991 when it was moved to its current address in Allentown, Pennsylvania. Defendant Winters assisted in the relocation and setup at the new location but resigned from Orange Products in February, 1993. In June of 1994, after a brief period of employment with another company, defendant Winters began his employment with Engineering Labs which is located in New Jersey.

   Plaintiff filed the instant action alleging that "there is likely to be evidentiary support" to prove that defendant Winters "has disclosed or used the confidential information" acquired [*3] during his employment with plaintiff company, "for the purpose of furthering [Engineering Labs, Inc.'s] business as a competitor of plaintiff." Plaintiff contends that such disclosures will cause irreparable harm to its business and seeks to enjoin any further disclosures.

II. LEGAL STANDARD

   [HN1] *Federal Rule of Civil Procedure 4(e)* establishes that a federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the state in which it sits. [HN2] Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." *42 Pa. Cons.Stat.Ann. § 5322(b)* (Purdon 1981). [HN3] When a personal jurisdiction defense is raised, the plaintiff must establish ei-

1995 U.S. Dist. LEXIS 3443, *

ther that the cause of action arose from the forum-related activities of the defendant (specific jurisdiction) or that the defendant has "continuous and systematic" contacts with the forum state (general jurisdiction). *Mellon Bank (East) v. Diveronica Bros.*, 983 F.2d 551, 554 (3d Cir. 1993). It is therefore [*4] not the defendant, but the plaintiff who is required to sustain its burden of proving, through affidavits or other competent evidence, that the court has in personam jurisdiction. *Time Share, 753 F.2d at 67 n.9; Jaffe v. Julien*, 754 F. Supp. 49, 51 (E.D.N.J. 1991). It is not enough for the plaintiff to rely on the pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion; instead, the plaintiff must respond to the defendant's motion with affidavits, *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-4 (3d Cir. 1990), and "actual proofs, not mere allegations." *Time Share, 753 F.2d at 67 n.9.*

### III. DISCUSSION

In support of its argument that this court can exercise jurisdiction over defendants, plaintiff has proffered the affidavit of Paul Sachdev, President, Chief Executive and Treasurer of Orange Products, Inc. As to defendant Winters, Mr. Sachdev's affidavit states the following: 1) beginning in July 1991 and continuing through the following six to eight months, defendant Winters lived in Allentown, Pennsylvania while working at plaintiff company; 2) at the end of this time period, defendant Winters commuted from New Jersey to Allentown; [*5] 3) defendant Winters obtained trade secrets concerning the manufacture of hollow plastic balls while in the employ of plaintiff; 4) defendant Winters entered into an employment agreement with plaintiff which contained a covenant not to compete; and, 5) following termination of his employment with plaintiff, defendant Winters began employment with defendant Engineering. Defendant Winters submitted two affidavits to the court which offer amplification of several of the statements made in the Sachdev affidavit. In particular, defendant Winters states: 1) he stayed in the Allentown apartment, which was rented and maintained by plaintiff, only two to three nights per week to lessen the commute to and from his home in New Jersey and never intended to relocate to Pennsylvania; 2) he never provided any of plaintiff's manufacturing or development processes to Engineering Labs or any other entity; and, 3) following termination of his employment with plaintiff, he was employed by AMS America Corp. for sixteen months.

[HN4] In determining whether exercise of specific jurisdiction is fair, the court in *Strick Corp. v. A. J. F. Warehouse Distrib., Inc.*, 532 F. Supp. 951, 957 (E.D.Pa. 1982), articulated [*6] several factors which the United States Supreme Court has made clear require evaluation: 1) has the defendant purposefully availed itself of the

privilege of conducting activities within the forum? See *Hanson v. Denckla*, 357 U.S. 235, 251, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); 2) did the cause of action arise from defendant's activities within the forum? See *McGee v. International Life Insur. Co.*, 355 U.S. 220, 223, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957); and, 3) were defendant's actions in the forum state substantial enough to make the exercise of jurisdiction over it reasonable? See *International Shoe Co. v. Washington*, 326 U.S. 310, 326, 90 L. Ed. 95, 66 S. Ct. 154 (1945). In sum, defendant's contacts with the forum must rise to a level such that the defendant would be able to reasonably anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). Applying these principles to the question of specific jurisdiction as to defendant Winters, this court finds that it can assert in personam jurisdiction over defendant Winters.

Defendant Winters purposefully availed himself of the privileges of conducting activities in Pennsylvania by continuing his employment with plaintiff Orange Products, Inc. after [*7] Orange Products relocated to Pennsylvania. Defendant Winters made the decision to actively pursue his employment with plaintiff company; accordingly, defendant Winters cannot be described as a "passive defendant" who is being forced to appear in an inconvenient forum on the basis of contacts which he did not initiate. See *Stick, 532 F. Supp., at 958.*

Further, this court finds that the cause of action at issue can be said to have arisen from defendant Winter's activities within Pennsylvania. While the employment agreement involved in this dispute presumably was signed in New Jersey to safeguard information that was then being shared, its protective nature was transferred to Pennsylvania when plaintiff company relocated. See *Horne v. Adolph Coors Co.*, 684 F.2d 255 (1982) (fictional situs of state trade secret and patent at the residence of the owner). Contrary to defendants' assertions, it is of no import that plaintiff has not proffered any evidence to demonstrate that defendant Winters learned new or additional manufacturing information or trade secrets while in Pennsylvania to support its claim that "all unlawful activities complained of have taken place, in whole or in [*8] part," within Pennsylvania. The company's change of situs does not diminish the ability of plaintiff to invoke the employment agreement to safeguard the information it was designed to protect. While it is true, as defendants assert, that to the extent defendants are breaching the agreement they are doing so in New Jersey, any harm to be suffered by plaintiffs will be felt in Pennsylvania. Therefore, jurisdiction over defendant Winters in Pennsylvania is proper based on the "effects" of his New Jersey conduct in Pennsylvania. *Calder v.*

*Jones*, 465 U.S. 783, 789-790, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984).

Finally, this court finds defendant Winters's acts in Pennsylvania were substantial enough to make this court's exercise of jurisdiction over him reasonable. The record reveals that he worked at the Allentown location for over one year. Accordingly, this court concludes that it can exercise in personam jurisdiction over defendant Winters.

While the court can exercise jurisdiction over defendant Winters, the record does not support the conclusion that we can exercise jurisdiction over defendant Engineering. To support its argument that this court can exercise jurisdiction over defendant Engineering, plaintiff [*9] offers the Sachev affidavit which states as follows: 1) defendant Engineering advertises in the Thomas Register, a national trade publication; 2) defendant Engineering has sold and continues to sell its product to purchasers in Pennsylvania; and, 3) over the past fifteen years, defendant Engineering has purchased seven to eight pieces of heavy equipment used in the manufacture of plastic balls from a Philadelphia company at a cost of approximately $ 30,000 each. Daniel Mason, president and chief executive officer of Engineering Labs, Inc. has submitted two affidavits which offer amplification of several of the statements made in the Sachdev affidavit. In particular, defendant Engineering states the following: 1) all of the plastic balls manufactured at defendant company are solid; the company is not now nor has it ever been engaged in the manufacture of plastic hollow balls; 2) defendant Winters has not shared any trade secrets and his work with defendant Engineering is wholly unrelated to the developments he was involved with at plaintiff company; 3) defendant Engineering has only purchased five Lapping machines from a Philadelphia company over the past fifteen to twenty years; 4) [*10] defendant Engineering has never directly or indirectly solicited business in Pennsylvania or elsewhere; 5) the six small accounts defendant Engineering has in Pennsylvania were all acquired prior to the employment of defendant Winters and defendant Engineering sells to them occasionally at their request; and, 6) total sales to these Pennsylvania accounts during defendant Winters's tenure at defendant company (six months at the time the affidavit was executed) equal $ 51,000 or 2.7% of defendant Engineering's total $ 1.9 million sales volume. Applying the aforementioned principles to the question of specific jurisdiction as to defendant, this court finds that we cannot assert specific jurisdiction.

While it is undisputed that defendant Engineering maintains six accounts with Pennsylvania interests, it cannot be found that defendant Engineering "purposefully availed" itself of the privileges of conducting business in Pennsylvania as defendant Engineering's affidavits establish it did not actively solicit that business.

[HN5] The touchstone of specific jurisdiction is that its exercise must be confined to causes of actions which arise from the non-resident corporate defendant's contacts [*11] with the forum state. That condition is not satisfied by the facts of this case. Because the existence of the six accounts predated defendant Winters's arrival at Engineering Labs, Inc., the present cause of action cannot arise from these contacts as neither plaintiff nor defendant Winters were parties to their creation. Plaintiff argues that the "effects" theory bolsters a finding of specific jurisdiction as the harm felt by the breach would be felt in Pennsylvania, possibly becoming manifest through the aforementioned six accounts. While plaintiff's argument has merit, it is not sufficient to support a finding of specific jurisdiction.

Failing to establish the ability of this court to assert specific jurisdiction over defendant Engineering, we must now determine if we can assert general jurisdiction. As previously stated, general jurisdiction focuses on whether the non-resident defendant has "continuous and systematic" contacts with the forum state. This type of jurisdictional basis generally is found where the defendant "makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market." [*12] *Strick, 532 F. Supp., at 956*. An additional consideration is whether defendant's contacts with the forum state were "central to the conduct of its business." *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 438 (3d Cir.)*.

Plaintiff has failed to show defendant Engineering specifically targeted the Pennsylvania market as the mere fact that it advertises in a national trade journal which circulates in Pennsylvania is not enough. Id., at 957. Likewise, plaintiff has failed to establish that defendant Engineering regularly solicits business in Pennsylvania. While the record reveals defendant Engineering does business in Pennsylvania, defendant Engineering has proffered affidavits which establish that it did not solicit or otherwise act to attract that business. In addition, the purchase of five machines from a Pennsylvania business spread out over a fifteen to twenty year period does not demonstrate "continuous and systematic" contacts with Pennsylvania. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.W. 408, 418 (1984)*. Moreover, defendant Engineering did not make a substantial number of direct sales to Pennsylvania as only $ 51,000 of defendant's [*13] $ 1.9 million total sales were generated from Pennsylvania contacts. Finally, defendant's sales to Pennsylvania are not central to its business of producing precision plastic balls. While it cannot be denied that the desired end result of production is to sell the product, the

type of activity contemplated by the "central to the conduct of its business" language is the day to day operation of defendant's business, not the resultant sales. See *Provident Nat. Bank, 819 F.2d at 438.* Therefore, based on the foregoing, this court concludes that it cannot exercise general jurisdiction over defendant Engineering.

In opposition to this court's finding that jurisdiction cannot be asserted against defendant Engineering, plaintiff urges the court to dismiss the Motion to Dismiss as the "record is incomplete." Plaintiff relies on the Third Circuit Court of Appeals decision in *Renner v. Lanard Toys Ltd., 33 F.3d 277, 283 (3d Cir. 1994)* to support its position. The Renner court, in reliance on several cases in which the right of plaintiffs to conduct discovery before dismissal for lack of personal jurisdiction was recognized, held that "under the circumstances" of that case the district [*14] court should have permitted discovery before ruling on the motion to dismiss. The Renner case involved a Hong Kong based corporate defendant about whom plaintiffs lacked crucial information needed to withstand a motion to dismiss. This court finds that the circumstances present in Renner are not present in the instant case. Accordingly, the motion will not be dismissed as premature to permit discovery. Turning now to defendants' Motion to Transfer Venue pursuant to *28 U.S.C. § 1404* n1 , this court finds that venue properly has been laid in this district and that defendants have not sufficiently demonstrated cause to transfer the case and override plaintiff's choice of forum. *Cain v. DeDonatis, 683 F. Supp. 510, 512 (E.D.Pa. 1988)*(outlining factors to be considered in motion to transfer). Accordingly, defendants' Motion to Transfer is denied. However, because this court lacks personal jurisdiction over defendant Engineering, defendant Engineering is dismissed as a party to the present action.

n1 [HN6] *28 U.S.C. § 1404*(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[*15]

An order follows.

**ORDER**

AND NOW, this 21st day of March, 1995, upon consideration of defendants' Motion to Dismiss for Lack of Jurisdiction and for Improper Venue pursuant to *Fed.R.Civ.P. 12(b)(2)* and (3), respectively, and, alternatively to Transfer Venue to the District of New Jersey and plaintiff's response thereto, it is hereby ORDERED that:

1) defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to defendant Engineering Labs, Inc. is GRANTED and defendant is dismissed as a party to this suit;

2) defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to defendant Howard Winters is DENIED;

3) defendants' Motion to Dismiss for Improper Venue is DENIED;

4) defendants' Motion to Transfer Venue is DENIED.

BY THE COURT:

RONALD L. BUCKWALTER, J.

# EXHIBIT 4

LEXSEE 2002 US DIST LEXIS 14757

**LESTER PAIGE, Plaintiff, v. SOLO CUP, Defendant.**

**Civil Action No. 02-025-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 14757; 89 Fair Empl. Prac. Cas. (BNA) 1247*

**August 6, 2002, Decided**

**DISPOSITION:** [*1] Motion to change venue granted.

**COUNSEL:** Lester Paige, PLAINTIFF, Pro se, Bridge-ville, DE USA.

For Solo Cup, DEFENDANT: G Kevin Fasic, Tighe, Cottrell & Logan, PA, Wilmington, DE USA.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM ORDER

At Wilmington this 6th day of August, 2002, having reviewed defendant's motion to transfer venue;

IT IS ORDERED that defendant's motion (D.I. 12) is granted for the following reasons:

1. In general, venue must be established pursuant to *28 U.S.C. § 1391* for each cause of action, and motions to transfer venue are considered pursuant to *28 U.S.C. § 1404*. In the case at bar, plaintiff filed an action for employment discrimination under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e*, et seq., alleging proper venue with this court. (D.I. 3)

2. Proper venue for Title VII actions is governed by *42 U.S.C. § 2000e-5(f)(3)*. (D.I. 12 at 1-2) Courts have determined that § 2000e-5(f)(3) sets forth four judicial districts where an employment discrimination action may be brought:

(1) [*2] where "the unlawful employment practice is alleged to have been committed;"

(2) where "the plaintiff would have worked but for the alleged unlawful employment practice;"

(3) where "the employment records relevant to such practice are maintained and administered;" and

(4) where the employer "has his principal office" if he cannot be found within the district where "the plaintiff would have worked but for the alleged unlawful employment practice."

*Thurmon v. Martin Marietta Data Sys., 596 F. Supp. 367, 368 (M.D. Pa. 1984)* (quoting *Stebbins v. State Farm Mutual Automobile Ins. Co., 134 U.S. App. D.C. 193, 413 F.2d 1100, 1102 (D.C. Cir. 1969)*). See also *EEOC v. Waffle House, Inc., U.S. , 534 U.S. 279, 122 S. Ct. 754, 760, 151 L. Ed. 2d 755 (2002); de Rojas v. Trans States Airlines, Inc., 204 F.R.D. 265, 267 (D.N.J. 2001)*.

3. Defendant claims that venue in the instant action is proper in the United States District for the District of Maryland for the following reasons:

a. The unlawful employment practices are alleged to have occurred at defendant's facilities located in Fede-ralsburg, Maryland; [*3]

b. The employment records that are relevant to this claim are also located at its Maryland facilities; and

c. Plaintiff would have worked and did work at the Solo Cup factory located in Federalsburg, Maryland. (D.I. 12, Exs. 1-2)

4. Based on the evidence submitted, the court finds that the underlying facts of the alleged discrimination occurred in Maryland.

2002 U.S. Dist. LEXIS 14757, *; 89 Fair Empl. Prac. Cas. (BNA) 1247

5. Accordingly, the Clerk of Court is directed to transfer the case to the United States District Court for the District of Maryland.

Sue L. Robinson

United States District Judge

# EXHIBIT 5

LEXSEE 1993 US DIST LEXIS 15669

**ANNE KRAVITZ, Plaintiff, v. INSTITUTE FOR INTERNATIONAL RESEARCH, INC., et al., Defendants**

**CIVIL ACTION NO. 92-5045**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1993 U.S. Dist. LEXIS 15669; 63 Fair Empl. Prac. Cas. (BNA) 444*

**November 3, 1993, Decided**
**November 5, 1993, Filed, Entered**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee brought this action pro se against defendants, employer and employees, alleging employment discrimination on the basis of sex and religion under Title VII of the Civil Rights Act of 1964 (Title VII), *42 U.S.C.S. § 2000e* et seq., and on the basis of age under the Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 621* et seq. Defendants brought a motion to dismiss or, in the alternative, to transfer venue.

**OVERVIEW:** The employee filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging religious and age discrimination. The EEOC concluded that there was no credible evidence to support her charges and that there was no violation of Title VII or the ADEA. The employee filed a timely appeal to the court, which found that she failed to establish venue on any of the three grounds specified in Title VII. The court found that at all relevant times the employee was employed at the New York office, the alleged unlawful practices occurred at that office, all of the relevant employment records were maintained at that office, and the employee would have continued working either at that office or overseas. The court asserted that the Eastern District of Pennsylvania did not meet any of the Title VII venue requirements, so venue was improperly laid in the district. The court held that the employee's religious, sex, and age discrimination claims were not a single cause of action, so it was in the interest of justice to transfer the case to another district court where venue was proper for all claims and where all claims could be heard in one proceeding. The case was transferred.

**OUTCOME:** The court transferred the case to another district court, as venue was improper in this court.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Discrimination > Title VII*
*Civil Procedure > Venue > General Venue*
[HN1] Title VII contains a provision specifically limiting venue: Such an action may be brought in any judicial district in the state in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if respondent is not found within any such district, such an action may be brought within the judicial district in which respondent has his principal office. *42 U.S.C.S. § 2000e-5(f)(3)*.

*Labor & Employment Law > Discrimination > Title VII*
*Civil Procedure > Venue > General Venue*
[HN2] Congress clearly intended to limit venue to the judicial districts concerned with the alleged discrimination. Furthermore, the general venue provision of *28 U.S.C.S. § 1391* does not provide an additional place of venue in Title VII actions. For employment discrimination cases, the Title VII venue provisions are exclusive.

*Labor & Employment Law > Discrimination > Title VII*
*Civil Procedure > Venue > General Venue*
[HN3] If there are only Title VII claims at issue, transfer of the entire case will be mandatory, not discretionary. However, venue generally must be established for each separate claim in a complaint. Unlike Title VII, the Age Discrimination in Employment Act has no special venue provision. It is governed by the general venue statute, *28 U.S.C.S. § 1391*.

1993 U.S. Dist. LEXIS 15669, *; 63 Fair Empl. Prac. Cas. (BNA) 444

*Civil Procedure > Venue > General Venue*

[HN4] Courts have adopted the principle of pendent venue to relax the rule requiring that venue be established for each claim. When the claims amount to a single cause of action, courts have allowed proper venue for one claim to support adjudication of another claim. Pendent venue is applied primarily when one claim is clearly the principal cause of action and another claim is secondary.

*Labor & Employment Law > Discrimination > Title VII*
*Civil Procedure > Venue > General Venue*

[HN5] In cases involving Title VII and Age Discrimination in Employment Act (ADEA) claims in which venue is properly laid for the Title VII claim but not the ADEA claim, courts have consistently transferred the entire action to the district where venue is proper for both claims. Proper venue under the ADEA will not support venue for a Title VII claim. The claims cannot be characterized as a single cause of action since each claim involves a different protected class and the evidence to support each claim will be different for each.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN6] *28 U.S.C.S. § 1406*(a) is the proper corrective vehicle when venue has been found to be improper. That section provides that the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406*(a). The decision to dismiss or transfer is committed to the discretion of a court acting in the interests of justice.

COUNSEL:    [*1]    FOR ANNE KRAVITZ, PLAINTIFF:    ANNE    KRAVITZ,    PRO    SE, HAVERTOWN, PA.

FOR    INSTITUTE    FOR    INTERNATIONAL RESEARCH INC., IRVING LAIDLAW, CHAIRMAN, I.I.R. INC., DEFENDANTS: CHARLES F. FORER, HANGLEY,    CONNOLLY,    EPSTEIN,    CHICCO, FOXMAN & EWING, PHILA, PA. WILLIAM H. EWING, PHILADELPHIA, PA.

FOR HELEN PICKERING, DONNA METE, DEBRA CHIPMAN, MOVANTS: CHARLES F. FORER, HANGLEY,    CONNOLLY,    EPSTEIN,    CHICCO, FOXMAN & EWING, PHILA, PA.

JUDGES: KELLY

OPINIONBY: JAMES McGIRR KELLY

OPINION:

MEMORANDUM

J. M. KELLY, J.

NOVEMBER 3, 1993

Presently before the court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, or in the alternative, to Transfer Venue. Plaintiff's Complaint alleges employment discrimination on the basis of sex and religion under Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e* et seq. (1981), and on the basis of age under the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 621* et seq. (1985). The Court has jurisdiction over this case pursuant to *28 U.S.C. § 1331*.

Facts and Procedural History

Plaintiff Anne Kravitz ("Plaintiff") [*2] is proceeding pro se and in forma pauperis. She now lives in Havertown, Pennsylvania. On October 29, 1991, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging religious and age discrimination. In that complaint she identified the Institute for International Research, Inc. ("Institute") as the sole defendant. On June 3, 1992, EEOC's district director concluded that there was no credible evidence to support her charges and that there was no violation of Title VII or the ADEA. Plaintiff filed a timely appeal of the EEOC's determination to this court.

Defendants responded to Plaintiff's original complaint with a motion to dismiss based on lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient process, and pleading defects. Plaintiff filed an amended complaint in which she added Institute employees Irvine Laidlaw, Helen Pickering, Donna Mete and Debra Chipman as additional defendants. Defendants then filed another Motion to Dismiss, but before the Court could consider this Motion, Plaintiff filed an "appeal" to the Third Circuit. On June 14, 1993, the "appeal" was dismissed as interlocutory.

Before [*3] the Court ruled on Defendants' Motion to Dismiss, which was again ripe, Plaintiff sought leave to supplement her amended complaint to add a charge of "reckless endangerment". Defendants filed a motion opposing Plaintiff's request. They argued that it was inappropriate in light of the pending Motion to Dismiss, that the supplemental pleading was completely unrelated to the original cause of action, that it would unduly prejudice Defendants, and that it was frivolous. Without waiting for the Court to rule on the motion, Plaintiff filed a Second Amended Complaint. Defendants moved to

strike this Putative Second Amended Complaint because Plaintiff failed to comply with *Rule 15(a) of the Federal Rules of Civil Procedure* which requires a Plaintiff either to obtain leave of court or written consent of defendants before filing an amended complaint. The Court has not ruled on this motion. As a result of Plaintiff's unilateral filing of a Second Amended Complaint, the Court dismissed Defendants' pending Motion to Dismiss the First Amended Complaint as moot. Defendants then filed the Motion to Dismiss the Second Amended Complaint or, in the alternative, Transfer Venue which is now before the [*4] Court.

In support of their Motion, Defendants have advanced a number of arguments regarding lack of personal and subject matter jurisdiction, statute of limitations, pleading defects, improper venue, and failure to state a claim upon which relief can be granted. Because I find that venue was improperly laid in the Eastern District of Pennsylvania, I am ordering that the case be transferred to the United States District Court for the Southern District of New York, the only judicial district where venue is properly laid for all claims.

Motion to Dismiss or, in the alternative, Transfer Venue

Defendants argue that venue in the Title VII claim is improperly laid in the Eastern District of Pennsylvania ("Eastern District"), and that the entire action should be transferred to the Southern District of New York, the sole judicial district where venue is proper for that claim. Plaintiff, who currently resides in the Eastern District of Pennsylvania, argues that a transfer to New York would unduly burden her. She also argues that jurisdiction in her case is based on diversity of citizenship, and venue is properly laid in the Eastern District of Pennsylvania.

[HN1] Title VII contains a provision [*5] specifically limiting venue:

> Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

*42 U.S.C. § 2000e-5(f)(3)* (1981).

[HN2] Congress clearly intended to limit venue to the judicial districts concerned with the alleged discrimination. *Stebbins v. State Farm Mutual Automobile Ins. Co., 134 U.S. App. D.C. 193, 413 F.2d 1100, 1102* (D.C. Cir.), cert. denied, *396 U.S. 895, 24 L. Ed. 2d 173, 90 S. Ct. 194 (1969)*. Furthermore, the general venue provision of *28 U.S.C. § 1391* does not provide an additional place of venue in Title VII actions. Id.; *Shuman v. Computer Associates Int'l., Inc., 762 F. Supp. 114, 118 (E.D. Pa. 1991);* [*6] *Thurmon v. Martin Marietta Data Systems, 596 F. Supp. 367, 368 (M.D. Pa. 1984)*. For employment discrimination cases, the Title VII venue provisions are exclusive. *Thurmon, 596 F. Supp. at 368.*

Plaintiff has failed to establish venue in the Eastern District of Pennsylvania on any of the three grounds specified in Title VII. At all relevant times Plaintiff was employed at the Institute's New York City office. The alleged unlawful practices occurred at that office. There is no allegation that any unlawful practices occurred in Pennsylvania. Secondly, all of the employment records pertaining to Plaintiff are maintained at the New York office. Lastly, Plaintiff would have continued working either at the New York office or overseas, not in Pennsylvania. The Eastern District of Pennsylvania does not meet any of the Title VII venue requirements, and venue is, therefore, improperly laid in this district for that claim.

[HN3] If there were only Title VII claims at issue, transfer of the entire case would be mandatory, not discretionary. See *Thurmon, 596 F. Supp. at 368.* However, venue generally must be established [*7] for each separate claim in a complaint. *Lamont v. Haig, 192 U.S. App. D.C. 8, 590 F.2d 1124, 1135 (D.C. Cir. 1978); Shuman, 762 F. Supp. at 115;* 15 Wright & Miller, Federal Practice and Procedure § 3808, at 80 (1986). Unlike Title VII, the ADEA has no special venue provision. It is governed by the general venue statute *28 U.S.C. § 1391.* Defendants do not contest the propriety of venue in the Eastern District of Pennsylvania for the ADEA claim.

[HN4] Courts have adopted the principle of "pendent venue" to relax the rule requiring that venue be established for each claim. When the claims amount to a single cause of action, courts have allowed proper venue for one claim to support adjudication of another claim. *Archuleta v. Sullivan, 725 F. Supp. 602, 603-04 (D.C. Cir. 1989).* Pendent venue is applied primarily when one claim is clearly the principal cause of action and another claim is secondary. See *Hayes v. RCA Service Co., 546 F. Supp. 661, 665 (D.C. Cir. 1988).*

[HN5] In cases involving Title VII and ADEA claims in which venue is properly laid for the Title [*8] VII claim but not the ADEA claim, courts have consis-

1993 U.S. Dist. LEXIS 15669, *; 63 Fair Empl. Prac. Cas. (BNA) 444

tently transferred the entire action to the district where venue is proper for both claims. See, e.g., *O'Connor v. Pan Am, 1990 WL 118286* at * 3 (S.D.N.Y. 1990) (court transferred a Title VII and ADEA action to venue where venue for Title VII claim was proper); *Archuleta v. Sullivan, 725 F. Supp. at 606*. The Archuleta court concluded that proper venue under the ADEA would not support venue for a Title VII claim. The court reasoned that the claims could not be characterized as a single cause of action since each claim involved a different protected class and the evidence to support each claim would be different for each. *Archuleta, 725 F. Supp. at 602*.

Defendants urge this reasoning on the Court. They also argue that it is most efficient to transfer the entire case, and not to split the proceeding, to the District Court for the Southern District of New York.

[HN6] *28 U.S.C. § 1406*(a) is the proper corrective vehicle when venue has been found to be improper. That section provides:

> The district court of a district in which [*9] is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

*28 U.S.C. § 1406*(a) (1993). The decision to dismiss or transfer is committed to the discretion of the Court acting in the interests of justice. *Hayes v. RCA Service Co., 546 F. Supp. 661, 665 (D.C. Cir. 1982);* 15 Wright & Miller § 3827, at 261-62 (1986).

I find venue for Plaintiff's Title VII claim is improperly laid in this district. Furthermore, Plaintiff's religious, sex and age discrimination claims do not amount to a single cause of action. Therefore, it is in the interest of justice to transfer this case to the United States District Court for the Southern District of New York where venue is proper for all claims and where all of Plaintiff's claims can be heard in one proceeding.

An appropriate order follows.

**ORDER**

AND NOW, this 3rd day of November, 1993, in consideration of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint or, in the alternative, Transfer Venue, Plaintiff's Response [*10] thereto, Defendants' Reply Memorandum, Plaintiff's Reply thereto, and for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that Civil Action No. 92-5045 is transferred to the United States District Court for the Southern District of New York.

BY THE COURT:

JAMES McGIRR KELLY, J.

## CERTIFICATE OF SERVICE

I, DAVID G. CULLEY, hereby certify that on this 2nd day of December, 2005, I electronically filed the attached Defendant's Motion to Dismiss with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Anthony Lewis Ware
2412 N. Monroe St.
Wilmington, DE 19802

I hereby certify that on this 2nd day of December, 2005, I have mailed by United States Postal Service, the Appendix to Defendant Ball Plastic Container Corp.'s Motion to Dismiss to the following participants:

Anthony Lewis Ware
2412 N. Monroe St.
Wilmington, DE 19802

**TYBOUT, REDFEARN & PELL**

/s/ David G. Culley

**DAVID G. CULLEY, I.D. # 2141**
**TIMOTHY S. MARTIN, I.D. # 4578**
300 Delaware Avenue, 11th Floor
P.O. Box. 2092
Wilmington, DE 19899-2092
(302) 658-6901
E-mail Address: dculley@trplaw.com
Attorney for Defendant Ball Plastic Corp.