IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY LEWIS WARE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-362-SLR |
| | ) |
| BALL PLASTIC CONTAINER CORP., | ) |
| | ) |
| Defendant. | ) |

Anthony Lewis Ware, Wilmington, Delaware.  Plaintiff, pro se.

David G. Culley, Esquire and Timothy S. Martin, Esquire of
Tybout, Redfearn & Pell, Wilmington, Delaware.  Counsel for
Defendant.  Of Counsel: Bradley E. Strawn, Esquire of Littler
Mendelson, PC, Philadelphia, Pennsylvania.

**MEMORANDUM OPINION**

Dated:  June ♂, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On June 6, 2005, Anthony L. Ware ("plaintiff") filed a pro se complaint alleging racial discrimination under Title VII of the Civil Rights Act of 1964.¹  42 U.S.C. § 2000(e) (2000). Plaintiff claims that Ball Plastics Corporation ("defendant") discriminated against him when it banned plaintiff from its premises on account of his race.  The court possesses subject matter jurisdiction under 28 U.S.C. § 1331 (2000).  Currently before the court is defendant's motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3). Because defendant relies upon an affidavit in support of the motion, the averments of fact in the affidavit shall be accepted as true, pursuant to Fed. R. Civ. P. 56(e), unless plaintiff files a counter-affidavit.  Plaintiff has not filed a responsive brief.  For the following reasons, the court will grant defendant's motion.

## II.   BACKGROUND

Plaintiff, an African-American, was employed by National Freight, Inc. as a tractor trailer driver.  (D.I. 2 at 6) Defendant contracted with National Freight to pick up and deliver soft drink and water bottles manufactured at defendant's Delran

---

¹Plaintiff filed the instant litigation after an Equal Employment Opportunity Commission ("EEOC") investigation and dismissal.  The EEOC stated it was unable to conclude, based on its investigation, that violations of the statute occurred. (D.I. 2 at 4)

plant in Cinnaminson, New Jersey. (D.I. 7 at 2) Plaintiff made daily runs to defendant's plant to pick up empty bottles and deliver them to Cott Beverage, defendant's customer. (D.I. 2 at 6)

Defendant is a Colorado corporation authorized to do business in several states, including New Jersey and Pennsylvania, but not Delaware. (D.I. 7 at 2) Defendant's Delran plant manufactures approximately 1.5 billion bottles per year. (D.I. 8 at A-29) Of these, about 42-45 million bottles, 3% of the plant's total annual production, are shipped to Pepsi Bottling Co., a Delaware customer, by a common carrier. (D.I. 8 at A-30) Defendant's employees do not deliver the products in Delaware; delivery is accomplished only through independent trucking contractors. (D.I. 7 at 3) Defendant's shipping records are maintained in New Jersey, and defendant has no manufacturing facilities in the State of Delaware. Id.

On February 16, 2004, plaintiff made a trip to defendant's Delran plant where he was delayed three times at two and one-half hours each.[2] (D.I. 2 at 6) Plaintiff complained about the delay because he was paid per load rather than hourly. Id. He was told to back his truck up to the dock, where he proceeded to wait an additional forty-five minutes. (D.I. 2 at 7) Plaintiff asked another African-American worker about the cause of the delay when

---

[2] The complaint is unclear concerning when or how these delays occurred.

Joe Dugan, a plant supervisor, began to "smart mouth" plaintiff. Id. Plaintiff admits, "there were words said between both of us," but alleges that Dugan did not hear phrases muttered under plaintiff's breath. Id. The truck was finally loaded two and one-half hours later. (D.I. 2 at 8)

Defendant contends that plaintiff acted in an abusive, vulgar and threatening manner toward Dugan. (D.I. 7 at 4) Dugan discussed the incident with William Gallagher, the warehouse manager, later that evening. Id. As a result of the incident, Gallagher banned plaintiff from the Delran plant and contacted plaintiff's supervisor. Id. Gallagher contends that he did not know of plaintiff's race until he read plaintiff's complaint filed with the EEOC in September 2004. (D.I. 8 at A-26 - A-27) Plaintiff, however, contends that he was described to Gallagher as "the big black guy with the beard" when Gallagher inquired as to the identity of the driver who caused the incident. (D.I. 2 at 11)

Plaintiff alleges that when he returned to work the next morning, he discovered that he had been banned from the Delran plant. (D.I. 2 at 8) Defendant counters that Gallagher did not ban plaintiff until one week following the incident. (D.I. 8 at A-27) Plaintiff argues that he is the only black truck driver banned from the plant and that white drivers "say a lot worse," but are not banned from the premises. (D.I. 2 at 9)

3

## III.   STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(c).  The moving party bears the burden to demonstrate that no
genuine issue as to any material fact is present. See Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10
(1986).  "Facts that could alter the outcome are 'material,' and
disputes are 'genuine' if evidence exists from which a rational
person could conclude that the position of the person with the
burden of proof on the disputed issue is correct." Horowitz v.
Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir.
1995) (internal citations omitted).  If the moving party has
demonstrated an absence of material fact, the nonmoving party
then "must come forward with 'specific facts showing that there
is a genuine issue for trial.'" Matsushita, 475 U.S. at 587
(quoting Fed. R. Civ. P. 56(e)).  The court will "view the
underlying facts and all reasonable inferences therefrom in the
light most favorable to the party opposing the motion." Pa. Coal
Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

This standard provides that the mere existence of some
alleged factual dispute between the parties will not defeat a

4

properly supported motion for summary judgment; the function of
this motion is to weigh the evidence and determine if a genuine
issue is present for trial. See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 247-49 (1986). If the nonmoving party fails to
make a sufficient showing on an essential element of its case
with respect to which it has the burden of proof, the moving
party is entitled to judgment as a matter of law. See Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court's role
with respect to summary judgment motions in discrimination cases
is "'to determine whether, upon reviewing all the facts and
inferences to be drawn therefrom in the light most favorable to
the plaintiff, there exists sufficient evidence to create a
genuine issue of material fact as to whether the employer
intentionally discriminated against the plaintiff.'" Revis v.
Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993)(quoting
Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

**IV. DISCUSSION**

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

The Due Process Clause of the Fourteenth Amendment limits
the power of the courts in exercising personal jurisdiction over
nonresident defendants. Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 414 (1984) (citing Pennoyer v. Neff,
95 U.S. 714 (1878)). Personal jurisdiction may be established

5

either through general or specific jurisdiction.³  General
jurisdiction exists when a nonresident defendant's contacts with
the forum state are so continuous and systematic that exercise of
personal jurisdiction would be reasonable and just.
Helicopteros, 466 U.S. at 415, (citing Perkins v. Benguet
Consolidated Mining Co., 342 U.S. 437, 445 (1952)).  Once a
defendant raises a jurisdictional defense, plaintiff bears the
burden of establishing sufficient contacts with the forum state.
Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d
434, 437 (3d Cir. 1987) (citing Gehling v. St. George's School of
Medicine, Ltd., 773 F.2d 539, 542 (3d Cir. 1985)).

Defendant's contacts with Delaware include the sale of
bottles to Pepsi Bottling Co., which accounts for 3% of its total
bottle production per year.  Defendant is a Colorado corporation
authorized to conduct business in New Jersey and Pennsylvania,
with no facilities located in Delaware.  Defendant keeps all of
its records in New Jersey.  None of defendant's employees work in
Delaware because delivery of defendant's products is achieved
through a common carrier.

Although the proper test for determining whether personal

³Specific jurisdiction requires that the defendant's
contacts within the state arise out of or relate to the
plaintiff's claim.  International Shoe Co. v. Washington, 326
U.S. 310, 317 (1945).  Plaintiff fails to prove specific
jurisdiction exists over the defendant because defendant's
contacts in Delaware, delivering bottles to Pepsi Bottling Co.,
are unrelated to plaintiff's discrimination claim occurring in
New Jersey.

6

jurisdiction exists is not based on a pure percentage of business
test, the standard for establishing general jurisdiction is
fairly high. Neogen Corp. v. Neogen Screening Inc., 282 F.3d
883, 891-892 (6th Cir. 2002). Plaintiff must establish, through
"extensive and persuasive facts," that defendant has "maintained
'continuous and substantial' affiliations" with the forum state.
Reliance Steel Prods. Co. v. Watson, Ess, Marshall, & Enggas, 675
F.2d 587, 588-89 (3d Cir. 1982) (citations omitted). Plaintiff
has failed to do so. See also Romann v. Geissenberger Mfg.
Corp., 865 F. Supp. 255, 261 (E.D. Pa. 1994) (finding no general
jurisdiction where defendant's contacts with the forum state
constituted two to four percent of total sales).

## B.   Motion to dismiss for improper venue

Title VII contains specific venue provisions. Venue is
proper in any judicial district

> in which the unlawful employment practice is
> alleged to have been committed,...in which
> the employment records relevant to such
> practice are maintained and administered,
> or...in which the aggrieved person would have
> worked but for the alleged unlawful
> employment practice, but if the respondent is
> not found within any such district, such an
> action may be brought within the judicial
> district in which the respondent has his
> principal office.

42 U.S.C. §2000e-5(f)(3)(2000). Venue is improper in the State
of Delaware because the employment discrimination took place in
New Jersey, the employment records are kept in New Jersey, and

7

plaintiff never has applied to work for the defendant in Delaware. Moreover, defendant does not have any offices in Delaware. The plain language of the Title VII provision does not permit the District of Delaware as a proper venue.

## C. Title VII Claim

Although this case may be transferred pursuant to 28 U.S.C. § 1406 to a proper forum, the court questions whether plaintiff may sue under Title VII because of his non-employee status. Title VII prohibits certain employer practices, including, "[D]iscriminat[ing] against **any individual** with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. §2000e-2(a)(1) (2000) (emphasis added). The statute prohibits discrimination of "any individual" and, therefore, Title VII may protect, in certain limited circumstances, an employee of a third party from the discriminatory acts of an employer not his own. Kemether v. Pennsylvania Athletic Assoc., 15 F. Supp. 2d 740, 762 (E.D. Pa. 1998). In other words, "a Title VII defendant need not be the plaintiff's employer to interfere impermissibly with plaintiff's employment opportunities." Id. See also Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 200 (3d Cir. 1994) (adopting a broad reading of the term "employee" under Title VII so as not to undercut the remedial purposes of the statute and allowing ex-employee to file a retaliation claim under Title VII); Sibley

8

Mem'l Hosp. v. Wilson, 488 F.2d 1338, 1342 (D.C. Cir. 1973) (male
private-duty nurse protected under Title VII when hospital
interfered with employment opportunities by refusing to refer him
to female patients).

If not an employee in fact, recovery is only permissible
where the plaintiff meets the common-law test of an employment
relationship.  Kemether, 15 F. Supp. 2d at 762.   Factors include
traditional agency law criteria for determining an employment
relationship, i.e.,

> the skill required; the source of the
> instrumentalities and tools; the location of
> the work; the duration of the relationship
> between the parties; whether the hiring party
> has the right to assign additional projects
> to the hired party; the extent of the hired
> party's discretion over when and how long to
> work; the method of payment; the hired
> party's role in hiring and paying assistants;
> whether the work is part of the regular
> business of the hiring party; whether the
> hiring party is in business; the provision of
> employee benefits; and the tax treatment of
> the hired party.

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-324 (1992).

Plaintiff was employed by a third party contractor, National
Freight, which delivered bottles for defendant.  Plaintiff
alleged no facts to show that defendant ever controlled or
supervised his daily activities other than making plaintiff wait
to load his truck and banning plaintiff from the Delran plant.
While plaintiff may have suffered economic losses as a result of
the ban and the constant delays, these incidents do not

9

demonstrate defendant's control or responsibility for the performance of plaintiff's work.   Moreover, it is unlikely that defendant compensated plaintiff for his work.   Thus, plaintiff is not an employee entitled to sue for discriminatory practices under Title VII.

## V.   CONCLUSION

For the reasons stated above, the motion to dismiss for lack of personal jurisdiction and improper venue is granted.   An appropriate order shall issue.

10